■ HAROLD C. CRANDALL et al., Respondents, v CRAIG M. SLEDZIEWSKI et al., Appellants, et al., Defendant. [687 NYS2d 812] —Mercure, J. P. Appeal from a judgment of the Supreme Court

(Lomanto, J.), entered April 15, 1998 in Schenectady County, upon a verdict rendered in favor of plaintiffs.

Plaintiffs brought this action to recover for personal injuries sustained by plaintiff Harold C. Crandall (hereinafter plaintiff) in an April 1, 1993 automobile accident. The matter came on for trial, and a jury rendered a verdict and made an award of damages in favor of plaintiffs. Defendants appeal, primarily contending that Supreme Court erred in denying their motion for a directed verdict at the close of plaintiffs' case based upon plaintiffs' failure to establish a prima facie case of serious injury as defined in Insurance Law § 5102 (d). We agree, and accordingly reverse Supreme Court's judgment and dismiss the complaint.

It is undisputed that in 1991 plaintiff was diagnosed as suffering from a grade I (mild) spondylolisthesis (a forward slippage of one intervertebral disc over another) of the fifth lumbar vertebra over the first sacral vertebra and was being treated for associated pain up to the time of the accident. It is also undisputed that, as related to the injury to plaintiff's lower back that formed the basis for the jury's determination of serious injury, plaintiff's objective diagnosis following the accident was no different than that before the accident. The basis for plaintiffs' claim of serious injury, then, was not that the accident had caused his spondylolisthesis (it clearly had not) but whether the accident aggravated his preexisting spondylolisthesis to such an extent as to have resulted in a permanent consequential limitation of the use of his spine, a significant limitation of use of his muscular-skeletal system or a medically determined impairment or injury of a nonpermanent nature that prevented plaintiff from performing substantially all of the material acts constituting his usual and customary daily activities for not less than 90 of the 180 days immediately following the accident (see, Insurance Law § 5102 [d]).

The only expert medical witness presented on plaintiffs' behalf was Alan Moskowitz, an orthopedic surgeon specializing in disorders of the spine. Moskowitz treated plaintiff following the accident, from June 23, 1993 to the time of trial. On September 13, 1994, Moskowitz performed posterior spinal fusion surgery on plaintiff. The surgery was successful and largely eliminated the pain that plaintiff claimed to have suffered up to that point. Moskowitz made it clear that he was not necessarily treating plaintiff for spondylolisthesis; rather, he was treating him for pain, which plaintiff fixed at 9 on a scale of 10. Based on plaintiff's statements, Moskowitz formed the opinion that the accident contributed to somewhere between

50% and 75% of plaintiff's pain. When asked the basis for that conclusion, however, Moskowitz candidly acknowledged that he had no alternative but to rely on plaintiff's own statements as to the frequency and intensity of the pain that he suffered before the accident, the "sudden increase in the onset of low back pain" as a result of the accident, and the pain that he had after the accident, which "according to [plaintiff was] a lot worse than he ever had before".

In fact, but for X-ray evidence of plaintiff's preexisting grade I spondylolisthesis and plaintiff's own subjective expressions of pain, Moskowitz actually found nothing wrong with plaintiff. In Moskowitz's initial range of motion examination, plaintiff was able to flex with his hand reaching his ankles (albeit with complaints of "a significant amount of mid-lumbar back pain"), extension was "pretty intact" ("but this did cause lumbosacral pain") and a neurologic examination was also intact (but "palpation of the spine elicited pain over the lower lumbar segments of the spine"). The extent of Moskowitz's reliance upon plaintiff's subjective expressions of pain is best expressed in this passage from his testimony: "I feel that this accident increased this patient's pain according to what he told me. I deal with patients' pain on a regular basis and the only thing we can go by, very often, is what patients report. If patients tell me they are not having significant enough pain prior to an accident to warrant any further treatment or care, and following a particular incident, they have an increased amount of pain that they feel is interfering with their quality of life enough to warrant an operation, then I believe what the patient is saying."

On cross-examination, the tenuous subjective basis for Moskowitz's opinion was shattered. Because Moskowitz had not been provided with most of plaintiff's preaccident medical history, he was unaware that plaintiff had made numerous complaints of severe lower back pain over a period of approximately two years prior to the accident and, in fact, had applied for Social Security disability benefits as a result of his condition (a claim eventually granted effective May 11, 1991). Notably, medical records relative to a June 27-28, 1991 hospital treatment indicated that plaintiff was experiencing low back pain that had greatly increased, would not respond to Motrin and was so severe that plaintiff was voicing an intent to commit suicide. A January 22, 1993 record showed that plaintiff was still complaining of low back pain and that, despite ongoing treatment for a year at Albany Medical Center, the pain had not gotten any better. At that point, an assessment plan

called for facet blocks (injections of novocaine into facet joints) and, if unsuccessful, possible spinal fusion surgery. Perhaps most damaging to plaintiff's case, Moskowitz was made aware for the first time that on March 22, 1993—less than one month prior to the accident—plaintiff had reported to his physician that his pain level was 8 or 9 on a scale of 10. Finally, Moskowitz acknowledged that he was unaware that plaintiff had expressed no complaint relative to his lower back for a period of five or six days following the accident. Moskowitz agreed that these revelations were important and that it was fair to say that he would "have to at least go back to square one and think this all through all over again before giving an opinion as to the extent to which, if any, the automobile accident was the cause of the symptoms [plaintiff] was reporting to [him]".

It is fundamental law that "a medical opinion based upon subjective complaints of pain is insufficient to support a claim of serious injury" (*Gaddy v Eyler*, 167 AD2d 67, 71, *affd* 79 NY2d 955; *see, Scheer v Koubek*, 70 NY2d 678, 679; *Broderick v Spaeth*, 241 AD2d 898, 900, *lv denied* 91 NY2d 805). Here, as in *Broderick v Spaeth* (*supra*), Moskowitz's examination of plaintiff provided no objective evidence of injury. To the contrary, Moskowitz was placed in the position of having to rely on plaintiff's statements that extension and flexion caused him pain beyond a certain limited range, that palpation of his lower back caused him pain, that his overall level of pain increased substantially and that this increase was sudden and coincided with the subject accident. Under the circumstances, we agree with defendants' contentions that there was no competent evidentiary basis for a finding of serious injury within any of the categories at issue here, that plaintiffs failed to present prima facie evidence of serious injury and that Supreme Court should have directed a verdict in favor of defendants at the conclusion of plaintiffs' case. Under the circumstances, we need not consider defendants' other assertions of error.

Peters, Spain, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is reversed, on the law, with costs, and complaint dismissed.