■ ELROY WATT et al., Respondents, v EASTERN INVESTIGATIVE BUREAU, INC., et al., Appellants. [708 NYS2d 472] —In an action to recover damages for personal injuries, etc., the defendants Eastern Investigative Bureau, Inc., and Michael Stone, and the defendant Naomi Henry separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Queens County (Dye, J.), entered August 20, 1998, as denied their respective motions for summary judgment dismissing the complaint insofar as asserted against them.

Ordered that the order is reversed, on the law, with one bill of costs, the motions are granted, and the complaint is dismissed in its entirety.

The plaintiff Elroy Watt (hereinafter Watt) alleged that he was struck by a car as it backed out of a driveway. He was treated at an emergency room, where an X-ray revealed a right knee strain, and released.

The defendants established, prima facie, that Watt did not sustain a serious injury as defined by Insurance Law § 5102 (d). The sworn reports of an orthopedic surgeon and a neurologist who examined Watt about five months after the accident indicated that he had a normal range of motion in his spine and right knee, and that the neck, back, and knee strains allegedly caused by the accident were temporary.

The evidence submitted by the plaintiffs failed to raise a triable issue of fact as to whether Watt sustained a serious injury (*see, Gaddy v Eyler,* 79 NY2d 955). The affidavit of Watt's treating physician consisted of merely " 'conclusory assertions tailored to meet statutory requirements' " (*Salem v Rosenberg,* 261 AD2d 601; *see also, Medina v Zalmen Reis & Assocs.,* 239

AD2d 394). Although the treating physician stated that Watt suffered a 30% restriction of motion of his right knee and a 20% restriction of his lumbar spine, the physician failed to describe the objective tests that he performed to support this conclusion. An affidavit of a physician which fails to explain the objective tests that were performed, or to offer objective medical proof of injury, will not suffice (*see, Grossman v Wright,* 268 AD2d 79; *Kauderer v Penta,* 261 AD2d 365; *McMillion v Stewart,* 249 AD2d 521).

Our dissenting colleagues conclude that the reports of magnetic resonance imaging (hereinafter MRI) tests performed on Watt's spine and right knee in June 1995 provided the requisite objective medical evidence. Watt's physician stated in his affidavit that the MRI test of Watt's knee showed a "grade II signal present in the posterior horn of the medial meniscus and degenerative signal in the medial and lateral menisci and minimal suprapatellar fluid" and that an MRI of his lumbar spine revealed "straightening of the lumbar lordosis and some early degenerative disc disease". However, the MRI report on Watt's knee included other findings as well, such as the "anterior and posterior horns are normal", there was "no abnormal intrameniscal signal suspicious for tear", the ligaments were intact, the medial collateral ligament was normal, and the tendons were normal. The impression stated in the report was "degenerative signal in the medial and lateral menisci". The MRI report on Watt's lumbar spine included references to "normal" lumbar vertebral bodies, the absence of herniation, disc spaces that were "well-maintained", and "some loss" of lumbar lordosis which may be secondary to muscular strain. The impression stated in the report included some "early degenerative disc disease". Under the circumstances, the mere recitation by Watt's physician of selected portions of the June 1995 MRI reports, without any explanation as to their significance, was insufficient to defeat the evidence proffered by the defendants, based on examinations in September 1995 that Watt suffered only temporary muscle strains as a result of the accident.

Accordingly, based on the lack of acceptable objective proof, the physician's affidavit submitted by the plaintiffs was insufficient to raise a triable issue of fact as to whether Watt sustained a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system" (Insurance Law § 5102 [d]; *see, Merisca v Alford,* 243 AD2d 613; *Antoniou v Duff,* 204 AD2d 670; *Grossman v Wright, supra*).

The evidence presented by the plaintiffs also failed to raise a triable issue of fact as to whether Watt was prevented by his injuries from performing his usual and customary activities for not less than 90 of the 180 days after his accident. Watt averred that he was unable to work for nine months following the accident, and his treating physician concurred in that statement. However, the record does not contain objective evidence to support Watt's claim that his injury prevented him from performing substantially all of his customary activities (*see, Jones v Malark,* 261 AD2d 788; *Davis v New York City Tr. Auth.,* 248 AD2d 428; *Yagliyan v Gun Shik Yang,* 241 AD2d 518). In the absence of objective evidence, we conclude that the treating physician's opinion was dependent upon Watt's subjective complaints and was therefore insufficient to support a claim for serious injury (*see, Bennett v Reed,* 263 AD2d 800; *Crandall v Sledziewski,* 260 AD2d 754; *Castano v Synergy Gas Corp.,* 250 AD2d 640; *see also, Scheer v Koubek,* 70 NY2d 678). O'Brien, J. P., Sullivan and Smith, JJ., concur.

Goldstein, J., dissents and votes to affirm with the following memorandum in which Feuerstein, J., joins: The Supreme Court denied the appellants' respective motions for summary judgment based upon the plaintiffs' submission of an affidavit stating that, as a result of the accident, the injured plaintiff suffered a "thirty degree limitation of movement in his right knee". The Supreme Court noted that "[t]he affidavit, which is premised upon the physician's examination of the injured plaintiff and an MRI test, is sufficient to defeat the motion for summary judgment". This Court has repeatedly held that an affidavit from the plaintiff's treating physician quantifying loss of range of motion is sufficient to raise an issue of fact with respect to serious injury (*see, e.g., Corbett v Flaks,* 262 AD2d 266; *Ventura v Moritz,* 255 AD2d 506). The treating physician's finding was based upon a recent examination, which is generally required by this Court (*see, Beckett v Conte,* 176 AD2d 774). Further, contrary to the majority's assertion, the treating physician's conclusion was also based upon objective evidence in a magnetic resonance imaging test (hereinafter MRI) of a "grade II signal present in the posterior horn of the medial meniscus of the right knee and a straightening of the lumbar lordosis in the lumbar spine". The majority's assertion that MRI tests showed nothing more than "temporary muscle strains" is based upon unsworn reports, and a determination that the defendants' experts' explanation of those reports is more credible than the plaintiffs' expert's analysis. However, determining the weight of the credible evidence is beyond the scope of a motion for summary judgment (*see, Ferrante v Amer-*

*ican Lung Assn.,* 90 NY2d 623; *Kawasaki v Hertz Corp.,* 199 AD2d 46).

Accordingly, contrary to the majority's assertion, the treating physician's affidavit did not constitute merely "conclusory assertions tailored to meet statutory requirements". The treating physician's affidavit was based upon acceptable objective evidence (*see, Carroll v Jennings,* 264 AD2d 494; *Quinn v Licausi,* 263 AD2d 820; *O'Sullivan v Atrium Bus Co.,* 246 AD2d 418).

In addition, the injured plaintiff's treating physician authorized the injured plaintiff to return to work on February 14, 1996, over nine months after the accident on May 9, 1995. In a "health care provider's statement" affirmed by the treating physician, the physician noted that his last treatment for the injured plaintiff's disability was on February 13, 1996, and that the injured plaintiff was able to return to work on February 14, 1996. The injured plaintiff, in an affidavit, confirmed that, at the time of the accident, he was employed by La Padula Auto Collision, Inc., and stayed out of work for at least nine months after the accident, as a result of his injuries.

The majority concludes that despite the fact that the injured plaintiff was employed at the time of the accident, was unable to work for nine months subsequent to the accident, and was only cleared by his treating physician to return to work on February 14, 1996, the plaintiffs failed to raise a triable issue of fact as to whether his injuries prevented him from performing substantially all of the material acts constituting his customary daily activities during at least 90 out of 180 days following the accident. In support of this conclusion, the majority states that the injured plaintiff's treating physician's opinion that the injured plaintiff was unable to work in that period was insufficient, because it was not based upon "objective evidence". However, as previously noted, the treating physician's opinion was in fact based upon objective evidence, including the results of an MRI. We further note that the fact that the injured plaintiff was employed at the time of the accident and did not work for nine months after the accident constitutes objective evidence that the injury prevented him from performing substantially all of the material acts which constitute his usual and customary daily activities (*see, Adetunji v U-Haul Co.,* 250 AD2d 483; *Kim v Cohen,* 208 AD2d 807). The question of whether the plaintiff Elroy Watt is a malingerer presents an issue of credibility beyond the scope of a motion for summary judgment (*see, Kravits v Long Is. Jewish-Hillside Med. Ctr.,* 113 AD2d 577).