[707 NYS2d 233]

HELENE GROSSMAN, Plaintiff, v ANNA WRIGHT et al., Defendants. (Action No. 1.)

RICARDO RIVERA et al., Plaintiffs, v ANNA WRIGHT et al., Defendants. (Action No. 2.)

RICARDO PALACIOS, Respondent, v ANNA WRIGHT, Appellant. (Action No. 3.)

Second Department, May 8, 2000

APPEARANCES OF COUNSEL

*Frank V. Merlino* (*Sweetbaum & Sweetbaum,* Lake Success [*Marshall D. Sweetbaum*] of counsel), for appellant.

## OPINION OF THE COURT

Per Curiam.

On this appeal, we are asked to determine if the plaintiff Ricardo Palacios, through the introduction of legally competent evidence, raised a triable issue of fact as to whether he sustained a serious physical injury within the meaning of Insurance Law § 5102 (d). We note at the outset that in opposition to the defendant's motion papers, which established a prima facie case of entitlement to summary judgment, the plaintiff failed to submit legally admissible evidence to support his contention that he had suffered a serious injury. The Supreme Court, however, failed to address the threshold issue of the competency of the plaintiff's submissions in determining the motion. We therefore take this opportunity to clarify the type and quality of evidence that a plaintiff must submit in order to establish that he or she has suffered a serious injury within the meaning of Insurance Law § 5102 (d).

This litigation is the result of a motor vehicle accident which occurred on November 6, 1994, at the intersection of Route 231 and Commack Road in North Babylon, Suffolk County. The collision gave rise to three actions, but only the action entitled *Ricardo Palacios v Anna Wright* is the subject of this appeal. At the time of the accident, the defendant Anna Wright (hereinafter the defendant) was operating a motor vehicle which collided with a motor vehicle operated by Ricardo Rivera. The impact propelled the Rivera vehicle into a vehicle operated by the plaintiff Ricardo Palacios (hereinafter the plaintiff).

By summons and complaint sworn to on January 5, 1996, the plaintiff commenced this action alleging that the accident was caused solely by the negligence of the defendant, and that as a result of the accident he sustained a serious physical injury as defined by Insurance Law § 5102 (d). The plaintiff submitted a verified response to a request for a bill of particulars stating that his injuries consisted, *inter alia,* of: "cervical sprain/strain syndrome, internal derangement, cervicocranial syndrome with myofascial pain syndrome, cervical radiculitis, * * * straightening of normal cervical lordosis, * * * lumbar spine internal derangement with herniated disc at L4-5 with thoracic radiculitis * * * [and] a diffuse circumferential bulging of the L4-5 disc causing narrowing of the right and left neural foramen." The plaintiff specifically alleged that as a result of the accident and the aforementioned injuries, he sustained a "significant limitation of use of a body function or system" (Insurance Law § 5102 [d]).

Following receipt of the verified bill of particulars, the defendant moved pursuant to CPLR 3212 for summary judgment dismissing the complaint on the ground that the plaintiff failed to establish that he had sustained a serious injury within the meaning of Insurance Law § 5102 (d). In support of her motion, the defendant supplied, *inter alia,* affirmed medical reports prepared by Stephen G. Zolan, an orthopedic surgeon, and M. Williams, a radiologist.

The report by Dr. Zolan was dated April 22, 1998. He stated that he conducted an independent examination of the plaintiff two days earlier. Dr. Zolan stated that the plaintiff had advised him that he injured his neck, back, and left shoulder in the accident and had remained out of work for one and one-half weeks because of the injuries. He resumed his full duties as a stockbroker at that juncture. The plaintiff reported to Dr. Zolan that at the time of the examination he was not undergoing any treatments, nor was he taking any prescription medication. Dr. Zolan noted that the plaintiff had been treated at the Deer Hills Chiropractic Group directly after the accident. The initial treatments were performed three or four times weekly and were later reduced to once a week. These treatments ceased after one and-one-half years.

Dr. Zolan's report specified the observations he made and the tests he conducted on the plaintiff during the physical examination. He observed that the plaintiff was able to get on and off the examination table unassisted, and that the plaintiff walked with a normal gait. Dr. Zolan concluded that the

plaintiff's injuries were causally related to the accident. His diagnosis, however, was that the cervical and lumbar sprains were resolved, as was the left shoulder contusion, and that, in his medical opinion, the plaintiff presented no evidence of orthopedic injury.

Dr. Williams submitted a report, dated December 18, 1995, in which he affirmed that he reviewed a magnetic resonance image (hereinafter MRI) of the plaintiff's lumbar spine taken on December 1, 1994. He wrote that the MRI showed a bulging annulus as well as disc narrowing at the L4-5 disc space level. He commented that these findings were chronic and unrelated to the accident. He also found that the remainder of the lumbar spine, including the lumbar curvature, were unremarkable. He found no evidence of fracture or pathologic subluxation. He concluded that the MRI did not reveal any injuries related to the accident.

In opposition to the motion, the plaintiff submitted his own affidavit, as well as an affirmation by Dickran Mgrdechian, a doctor of chiropractic medicine, and other medical records which were not in admissible form. In his affirmation dated January 25, 1999, Dr. Mgrdechian stated that he examined the plaintiff on January 4, 1999. He indicated that the plaintiff complained of daily headaches, pain in the left side of his neck, and constant lower back pain. As part of the examination, he performed range of motion tests on both the lumbar and cervical portions of the plaintiff's spine. He found slight restrictions in the range of motion of the lumbar spine upon extension and left rotation. The plaintiff exhibited 20 degrees flexation as opposed to the normal 30 degrees. He found a restricted range of motion in every function of the cervical spine, ranging from a 10-degree diminution to a 30-degree diminution. He rendered an opinion, based upon the history provided by the plaintiff, that a causal relationship existed between the accident and the injury. Further, based upon the loss of flexation, the plaintiff's condition could be considered chronic and permanent.

The plaintiff related in his affidavit that he had been forced to make lifestyle changes as a result of the injuries. He could no longer play football, basketball, tennis, or lift weights, activities he greatly enjoyed and missed. He repeated that he was in daily pain. He also took exception to Dr. Zolan's conclusion, noting that Dr. Zolan's entire examination lasted only 10 minutes.

In her reply, the defendant contended that the plaintiff's response was insufficient to defeat the motion because it

consisted of Dr. Mgrdechian's unsworn affirmation, which was patently inadmissible as evidence, and that, in any event, Dr. Mgrdechian's findings should be ignored because they failed to indicate the objective basis upon which he determined the stated degrees of limitation in the plaintiff's cervical spine.

The Supreme Court denied the motion, concluding that the plaintiff had submitted admissible evidence which raised triable issues of fact precluding summary judgment.

### ANALYSIS

Determination of this case begins with the definition of "serious injury" as contained in the Insurance Law. A serious injury must be a personal injury, "[W]hich results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitutes such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (Insurance Law § 5102 [d]).

The analysis of the meaning of serious injury has a long history beginning with *Licari v Elliott* (57 NY2d 230). Applying what could be gleaned from the legislative intent, the Court of Appeals, analyzing the word "significant," wrote that "the word 'significant' as used in the statute pertaining to 'limitation of use of a body function or system' should be construed to mean something more than a minor limitation of use. We believe that a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute" (*Licari v Elliott, supra,* at 236). The Court of Appeals reiterated this analysis in *Dufel v Green* (84 NY2d 795), in which it wrote that the legislative intent of the "no-fault" legislation was to weed out frivolous claims and limit recovery to major or significant injuries. In that regard, summary judgment should be granted in cases where the plaintiff's opposition is limited to "conclusory assertions tailored to meet statutory requirements" (*Lopez v Senatore,* 65 NY2d 1017, 1019; *see also, Carroll v Jennings,* 264 AD2d 494).

In cases such as the present one, a defendant can establish that the plaintiff's injuries are not serious within the meaning

of Insurance Law § 5102 (d) by submitting the affidavits or affirmations of medical experts who examined the plaintiff and conclude that no objective medical findings support the plaintiff's claim (*see, Turchuk v Town of Wallkill,* 255 AD2d 576). With this established, the burden shifts to the plaintiff to come forward with evidence to overcome the defendant's submissions by demonstrating a triable issue of fact that a serious injury was sustained within the meaning of the Insurance Law (*see, Gaddy v Eyler,* 79 NY2d 955). The plaintiff in such a situation must present objective evidence of the injury. The mere parroting of language tailored to meet statutory requirements is insufficient (*see, Powell v Hurdle,* 214 AD2d 720; *Giannakis v Paschilidou,* 212 AD2d 502). Further, this Court has consistently held that a plaintiff's subjective claim of pain and limitation of motion must be sustained by verified objective medical findings (*see, Kauderer v Penta,* 261 AD2d 365; *Carroll v Jennings, supra*). Moreover, these verified objective medical findings must be based on a recent examination of the plaintiff (*see, Kauderer v Penta, supra*). In that vein, any significant lapse of time between the cessation of the plaintiff's medical treatments after the accident and the physical examination conducted by his own expert must be adequately explained (*see, Smith v Askew,* 264 AD2d 834).

Therefore, in order to successfully oppose a motion for summary judgment on the issue of whether an injury is serious within the meaning of Insurance Law § 5102 (d), the plaintiff's expert must submit quantitative objective findings in addition to an opinion as to the significance of the injury. Although each case will stand or fall on its own facts, certain objective tests satisfy this standard.

Physical examinations personally conducted by the person making the affidavit or affirmation are sufficient (*see, Cesar v Felix,* 181 AD2d 852; *see also, Ventura v Moritz,* 255 AD2d 506; *Yahya v Schwartz,* 251 AD2d 498). However, an affidavit or affirmation simply setting forth the observations of the affiant are not sufficient unless supported by objective proof such as X-rays, MRIs, straight-leg or Laseque tests, and any other similarly-recognized tests or quantitative results based on a neurological examination (*see, Kraemer v Henning,* 237 AD2d 492; *Zalduondo v Lazowska,* 234 AD2d 455; *Kim v Cohen,* 208 AD2d 807; *Georgia v Ramautar,* 180 AD2d 713; *Spezia v De Marco,* 173 AD2d 462).

Here, the evidence submitted by the defendant in support of her motion was sufficient to establish a prima facie case that

the plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) (*see, Gaddy v Eyler, supra*). The medical opinion expressed by Dr. Zolan was supported by his physical examination of the plaintiff, his review of plaintiff's medical records, and the objective physical tests he performed on the plaintiff. Further, Dr. Williams opined, based upon his review of the plaintiff's MRI, that the plaintiff's current injuries were not related to the accident.

The plaintiff's opposition was insufficient to raise a triable issue of fact. The medical evidence submitted consisted of various reports which were not in admissible form (*see, Pagano v Kingsbury,* 182 AD2d 268). Further, the affirmation of Dr. Mgrdechian, a chiropractor, which was not subscribed before a notary or other authorized official, is not competent evidence (*see*, CPLR 2106; *Young v Ryan,* 265 AD2d 547; *Doumanis v Conzo,* 265 AD2d 296; *Gill v O.N.S. Trucking,* 239 AD2d 463; *Valencia v Siu-Ke Lui,* 239 AD2d 339). In any event, even if the substance of Dr. Mgrdechian's affirmation is considered, it did not raise a triable issue of fact as to whether the plaintiff sustained a serious injury, as Dr. Mgrdechian failed to set forth the objective tests, if any, he performed in arriving at his conclusions concerning any alleged restrictions in the plaintiff's motion (*see, Smith v Askew, supra; Kauderer v Penta, supra*).

Accordingly, as the plaintiff has failed to submit admissible evidence sufficient to raise a triable issue of fact, the order is reversed, with costs, the defendant's motion is granted, and the complaint in the action entitled *Ricardo Palacios v Anna Wright* is dismissed.

MANGANO, P. J., RITTER, JOY, McGINITY and SMITH, JJ., concur.

Ordered that the order is reversed, with costs, the motion is granted, and the complaint in the action entitled *Ricardo Palacios v Anna Wright* is dismissed.