■ ALAN LICHTMAN et al., Respondents, v RUSSELL HEIT, Appellant, et al., Defendants. [752 NYS2d 649] —Order, Supreme Court, Bronx County (Kenneth Thompson, Jr., J.), entered January 11, 2002, which denied defendant-appellant's motion for summary judgment dismissing the complaint, affirmed, without costs.

Defendant Russell Heit's motion to dismiss the complaint on the ground that plaintiff Alan Lichtman did not sustain serious injury as required by Insurance Law § 5102 (d) was appropriately denied. The moving papers fail to establish appellant's right to judgment as a matter of law (*see Smith v Wetzel*, 294 AD2d 488). Appellant's neurologist's affirmation and report, submitted in support of the motion, includes a finding of "neuralgia paresthetica," denoting severe, stabbing or throbbing pain in the course or distribution of a nerve, involving numbness and tingling in the affected extremity (Stedman's Medical Dictionary 1206, 1316 [27th ed 2000]). This finding is consistent with that of the injured plaintiff's treating physician, who diagnosed the condition as meralgia paresthetica, "burning pain * * * along the lateral aspect of the thigh in the distribution of the lateral femoral cutaneous nerve due to

entrapment of that nerve; affected skin area is often hyperesthetic" (*id.* at 1093), that is, hypersensitive. A diagnosis of meralgia paresthetica based partly upon subjective complaints of pain will support a determination of serious injury when substantiated by medical testimony (*see Paternoster v Drehmer*, 260 AD2d 867, 869). As in *Paternoster*, the diagnosis is uncontroverted and supported by the objective pin-prick test disclosing sensitivity along the affected nerve. Testing also disclosed some limitation in range of motion of the right leg, albeit modest.

The conclusions stated by one of appellant's doctors that Mr. Lichtman's condition is "not usually attributed to the kind of trauma described in this accident" is merely speculative. The opinion of another doctor that "there is no impact of this particular finding on daily activities" is unsupported by his objective medical finding of "hyp[er]esthesia to pin over the lateral aspect of the right thigh corresponding to the distribution of the lateral cutaneous nerve of the thigh" and otherwise improper. As this Court stated in *Singh v Kolcaj Realty Corp.* (283 AD2d 350, 351), "Where the offered proof intrudes upon the exclusive prerogative of the court to render a ruling on a legal issue, the attempt by a [party] to arrogate to himself a judicial function under the guise of expert testimony will be rejected (*Sawh v Schoen*, 215 AD2d 291, 293-294; *see also Lipton v Kaye*, 214 AD2d 319, 322-323)." Accordingly, appellant failed to satisfy his initial burden to establish that Alan Lichtman did not sustain a serious injury, and denial of appellant's application is required, "without regard to the quality of plaintiff's opposition papers" (*Pisasale v Buckhorn Carriers*, 249 AD2d 157, 158). Concur—Ellerin, Lerner, Rubin and Gonzalez, JJ.

Tom, J.P., dissents in a memorandum as follows: Insofar as I conclude that the necessary showing of "serious injury" is not established prima facie, I would reverse and dismiss. Accordingly, I dissent.

Plaintiff was involved in an automobile accident on the Grand Concourse on May 15, 1998. He testified at his deposition that the accident occurred at about 4:10 P.M. while he was on his way home from work, and that it occurred in bumper-to-bumper conditions, necessarily describing a slow pace of traffic. He also testified that three vehicles were involved, that he was hit in the rear and then he hit a street barricade apparently connected with street repair. As a result of the impact, he claimed that his body moved forward and then backward, leading to back injuries and nerve damage to his upper leg. He did

not seek medical help after the accident, even though an ambulance was at the scene, and he drove home. The following morning, he awoke with back pain and then sought treatment at a local hospital. No MRIs or X rays were taken, and he was prescribed a muscle relaxer. About two weeks later, he was seen by his physician, a Dr. Bouchard, who, after prescribing a muscle relaxer, told plaintiff that he could work but that it would take a while for the back to heal. Physical therapy was recommended. Plaintiff went out on disability and undertook a 10-week course of heat and ultrasound treatment. After completion of this treatment, he was told that he could return to work. An orthopedist to whom plaintiff was referred, Dr. George, found no permanent spinal injuries but soft tissue injury that would take a while to heal. Dr. George referred plaintiff to a neurologist, Dr. Babigian, to examine complaints of leg pain. Dr. Babigian diagnosed meralgia paresthesia and prescribed a pain reliever. These examinations were in 1998. No further medical treatment was sought until around the time the present action was filed.

Plaintiff, in his bill of particulars, claimed a lumbo-sacral sprain, a cervical sprain, pain to his spinal cord and a contusion of the right hip. At the time of his deposition, plaintiff claimed to suffer only leg pain, though he claimed that the discomfort interferes with going to malls and work in his yard and occasionally requires plaintiff to sit down until the pain passes. He testified that he missed one week of work following the accident (five work days), and another nine weeks (45 work days) while he was on disability, after which he was advised to return to work. This totals 50 work days in which he could not undertake his usual work.

Defendant Heit owned and operated one of the vehicles involved, defendant Hansen owned and operated another vehicle involved, and defendant Co-Star Contracting Co. was involved in maintenance and repair operations at the location of the accident.

Defendants moved for summary judgment dismissing the complaint for plaintiff's failure to adequately establish serious injury under Insurance Law § 5102 (d). That statute defines "serious injury" as a personal injury that includes death; dismemberment; significant disfigurement; a fracture; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from

performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the accident.

Once defendants moved for summary judgment, plaintiff bore the burden of refuting the allegations that he had not suffered a serious injury by submitting prima facie proof of serious injury. Plaintiff's evidence does not meet this threshold under any of the delineated theories.

An affirmation and medical report was submitted by Dr. Robert Orlandi on behalf of defendants. Dr. Orlandi concluded on the basis of a March 1, 2001 medical exam that plaintiff's lower back was not significantly discomforted, although he complained of lower and upper back pain, that he expressed no cervical complaints, and that he had a lumbar sprain with a mild right muscular spasm. In view of what the physician understood to be a very minor motor vehicle accident, he concluded that this spasm was related to degenerative disc disease or a degenerative lumbar disorder. The physician noted that plaintiff had a full range of motion and there were no radicular findings, and that though the mild muscular spasm on the right might be causally related to the accident, it was more likely a consequence of plaintiff's obesity. He concluded that the back discomfort did not constitute a disability from his normal work activities.

Dr. Robert April also examined plaintiff on March 1, 2001 on behalf of defendants. His medical report was included with an affirmation on the motion. Dr. April found that plaintiff's range of motion for his neck was normal, that there was no neuromuscular atrophy, weakness or lack of coordination, and that plaintiff walked normally and had no trouble climbing onto the examining table, or in dressing and undressing himself. Although some evidence of neuralgia paresthetica was found, this was described as a benign, nondisabling, superficial neuropathic condition of the right lateral femoral cutaneous nerve that would not normally be attributed to the type of trauma described for this accident. Moreover, there was no motor weakness and no impact on plaintiff's daily activities. Hence, Dr. April found there to be no disability, and no causally related neurological disability from the accident.

Plaintiff submitted an affirmation by Dr. William Lichtenfeld dated May 25, 2001. The affirmation consisted of unsworn medical reports which related the narrative history of plaintiff's treatment by other physicians. Dr. Lichtenfeld saw plaintiff for the first time three years after the accident and after defend-

ants moved for summary judgment. Dr. Lichtenfeld noted that plaintiff continued to complain of "shooting pain into the right anterior and lateral thigh," which is exacerbated by driving for even short time periods. The examination of the lumbar spine indicated paralumbar tenderness without spasms, tenderness in the right hip, difficulties with leg-raising exercises, and decreased sensation in the right thigh. The report also noted that plaintiff is morbidly obese. Dr. Lichtenfeld opined that plaintiff suffered from traumatic myofascial lumbar pain syndrome as well as meralgia paresthetica to the right lower extremity. He concluded that these conditions were causally related to the automobile accident. Although noting that plaintiff's obesity placed him at greater risk for meralgia paresthetica, Dr. Lichtenfeld stated that plaintiff had had no significant complaints of leg pain prior to the accident and hence concluded that the seat belt caused the meralgia paresthetica and ongoing leg complaints. Dr. Lichtenfeld concluded that plaintiff would experience permanent partial sensory deficits. Notably, Dr. Lichtenfeld, in offering his opinions, relied on medical reports of other physicians and an MRI.

The motion court denied defendants' motion to dismiss.

There are several flaws in plaintiff's case. First, the medical records and the MRI on which he relies are all unsworn, except for Dr. Lichtenfeld's affirmation and as such are not competent to establish serious injury under Insurance Law § 5102 (d) (*Graham v Shuttle Bay*, 281 AD2d 372; *Charlton v Almaraz*, 278 AD2d 145). As noted before, Lichtenfeld's examination was conducted more than three years after the accident, and plaintiff fails to explain the absence of any medical examination during this hiatus. This Court has taken note of such unexplained gaps in treatment in affirming or rendering summary judgment for defendants on the issue of "serious injury" (*Conroy v Agostini*, 270 AD2d 155; *Ceruti v Abernathy*, 285 AD2d 386; *Bandoian v Bernstein*, 254 AD2d 205, citing *Medina v Zalmen Reis & Assoc.*, 239 AD2d 394 [2d Dept 1997]). In terms of the 90/180-day threshold, he seems to have missed only 50 days of work, and otherwise failed to explain how his daily activities were restricted "to a great extent rather than some slight curtailment" (*Licari v Elliott*, 57 NY2d 230, 236; *accord Berk v Lopez*, 278 AD2d 156, *lv denied* 96 NY2d 708; *accord Szabo v XYZ, Two Way Radio Taxi Assn.*, 267 AD2d 134, 135-136) during the relevant time period. Even Dr. Lichtenfeld's report more credibly connected plaintiff's discomfort to his obesity, paralleling the conclusions of other physicians, and otherwise seemed only to be an endeavor at tailoring his conclusions to meet the statutory criteria.

The majority alludes to an objective pin-prick test disclosing sensitivity along the affected nerve. But the only reference to a "pin" test that I find in the record is in Dr. April's report, which, as noted, found no disability and no causality. Moreover, I would contend that, absent further evidence of a disability as defined in the statute, "sensitivity" does not suffice as a serious injury. By contrast, in *Paternoster v Drehmer* (260 AD2d 867), cited by the majority, the decision states that a "pin prick test" was administered, that a pinched nerve was established, resulting in "hypersensitivity," that plaintiff had, unsuccessfully, undergone nerve block treatment to relieve the pain, and, more critically, that the pain permanently kept him from performing many of his normal physical activities, that almost all of his activities were restricted by pain and that these limitations were medically supported. The present case clearly lacks such a showing. Hence, plaintiff has failed to meet his burden in opposing the summary judgment motion, either in terms of the 90/180-day time period, or by showing the permanent loss of a body member or function or significant limitation in the use thereof (*Ceruti, supra*), and his subjective claims of pain are insufficient to raise a triable issue of fact on this evidence (*Graham, supra*).

Accordingly, I would grant the motion and dismiss.