Simoneschi v Dedicated Leasing Serv. LLC (2004 NY Slip Op 50643(U))

[*1]

Simoneschi v Dedicated Leasing Serv. LLC

2004 NY Slip Op 50643(U)

Decided on March 2, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 2, 2004

Supreme Court, Kings County
Kristine Simoneschi, Plaintiff,
against
Dedicated Leasing Serv. LLC, et al., Defendants.
15979/02

Larry D. Martin, J.
The defendants herein move, pursuant to CPLR 3212, for an order granting summary judgment dismissing the complaint, on the ground that plaintiff has not sustained a "serious injury" within the meaning of section 5102 (d) of the Insurance Law.[FN1] Plaintiff opposes the motion.[FN2]
[*2]
FACTUAL AND PROCEDURAL HISTORY
This is a lawsuit for personal injuries allegedly sustained by plaintiff Kristine Simoneschi (Simoneschi) as a result of a motor vehicle accident that occurred on September 7, 2000. On that date, plaintiff, then a freshman at St. John's University in Staten Island, was driving eastbound on the lower level of the Verrazano Narrows Bridge, when the defendants' 18-wheeler allegedly sideswiped the rear-end of her vehicle, propelling it forward across three lanes of traffic into the center guard rail. Her vehicle then spun around twice, once again crossing three lanes of traffic before coming to a rest. Plaintiff was taken by ambulance to the emergency room of Victory Memorial Hospital where she was treated and placed under observation before being discharged. She subsequently commenced medical treatment for her injuries.
Plaintiff served a verified bill of particulars upon defendant on or about October 8, 2002, and a supplemental bill of particulars on or about March 10, 2003.
In her bills of particulars, plaintiff pleads a number of injuries, including, inter alia: (1) central subligamentous herniated disc at the L5-S1 level; (2) loss of normal lordosis with muscle spasm; (3) multiple subluxation complexes with a hypolordotic cervical curve consistent with muscle spasm; (4) acute post-traumatic cervical myofascitis with muscle spasm; (5) radiculitis; (6) sciatica; (7) hyperextension/hyperflexion injury to the neck; (8) left leg thigh pain; and (9) headaches.
DEFENDANTS' MOTION
To succeed on a motion for summary judgment, defendants must meet an initial burden of demonstrating that plaintiff did not sustain a "serious injury" as that term is defined by Insurance Law § 5102 (d) (see Gaddy v Eyler, 79 NY2d 955; Omar v Goodman, 295 AD2d 413; Fenstamacher v Reyell, 152 AD2d 890). In support of their motion, defendants rely on the results of independent medical examinations conducted of the plaintiff on February 12, 2003 by Dr. Joseph L. Paul, a Diplomate of the American Board of Orthopedic Surgery, and by Dr. Dimitriy V. Kolesnik, neurologist. In their respective reports, both Dr. Paul and Dr. Kolesnik affirmed to the truth of their statements in accordance with the provisions of CPLR 2106.
Affirmation of Dr. Paul
Based upon his physical examination of plaintiff, Dr. Paul found plaintiff to be alert, cooperative and well-oriented to person, place and time. She was able to follow commands and cooperate with the examination. Dr. Paul did not have the benefit of reviewing plaintiff's prior medical records in coming to his medical opinion.
Dr. Paul's examination of the cervical spine revealed a normal lordosis. The cervical paraspinal region was palpated using light touch and no paraspinal or trapezius muscle spasm was noted. Cervical compression testing was negative. Range of motion testing of the cervical spine was noted as follows: flexion to 45 degrees (normal is 45 degrees); extension to 45 degrees (normal is 45 degrees); right and left rotation to 70 degrees (normal is 70 degrees); and right and left lateral rotation to 45 degrees (normal is 45 degrees).
Dr. Paul's affirmation further states that his neurological examination revealed muscle strength graded at 5/5 in the biceps, triceps, wrist flexors and extensors bilaterally. Deep tendon brachioradialis, biceps and triceps reflexes were noted as being present and active bilaterally at 2+. [*3]Grasping power was firm in both hands, and there was no radiation of pain or parasthesia. Examination of the lumbar spine revealed a normal lordotic curve. There was no spasm or tenderness noted over the paraspinal musculature on palpation. Sitting Lasegue testing was negative to 80 degrees. Straight leg raising was negative to 75 degrees in both the seated and supine positions. Patrick testing was negative. Range of motion testing of the lumbar spine revealed forward flexion to 90 degrees (normal is 90 degrees); extension to 30 degrees (normal is 30 degrees); and both right and left lateral flexion to 45 degrees (normal is 45 degrees).
There was no atrophy noted in the lower extremities. Patellar and Achilles deep tendon reflexes were normal at 2+. There was no sensory deficit. Muscle strength was graded at +5 bilaterally. Femoral nerve stress test of hip adduction and extension provoked no pain. Patrick's test was negative. Knee flexion and active leg raising were performed without difficulty.
As a diagnosis, Dr. Paul found (1) resolved sprain of the cervical and lumbar spines, and (2) right and left leg exam within normal limits. He opined that plaintiff had no disability at this time. He was also of the belief that further treatment is not medically necessary from an orthopedic point of view, but that based on the information available, the history as related by the plaintiff and his physical examination, Dr. Paul opined that there is probable causality between the injuries sustained and the accident reported.
Affirmation of Dr. Kolesnik
Dr. Kolesnik, after noting plaintiff's complaints of pain, reviewed plaintiff's medical records and conducted a neurological examination. He found mild paraspinal tenderness to palpation of the muscles in the cervical and lumbar regions of the spine. Range of motion in the cervical lumbar spine was full. Straight leg testing was negative bilaterally.
Dr. Kolesnik conducted an examination of the cranial nerves and noted that visual fields were full; pupils were round, equal and reactive to light; extraocular movements were intact; there was no nystagmus; facial sensation was intact; there was no face asymmetry; and the palate was elevated symmetrically, and tongue was midline.
Detailed motor examination was normal. Muscle strength was 5/5 in the upper and lower extremities and in the proximal and distal muscle groups. Muscle tone and bulk appeared normal.
Deep tendon reflexes were found to be active and symmetric. Plantar responses were flexor. A sensory examination was normal in all four extremities to all modalities. There was no dysmetria on finger to nose testing. As to gait and station, Romberg's test was negative and there was no gait ataxia. As a diagnosis, Dr. Kolesnik found there was (1) resolved cervical sprain, and (2) resolved lumber sprain. He opined, based upon a normal neurological examination, that there is a causal relationship between the injuries sustained and the accident of record. He found no need for further neurological treatment.
In order to meet their initial burden of proof, defendants must submit evidentiary proof in admissible form (Van Patten v U.S. Truck Body Co., Inc., 176 AD2d 1095). In setting forth his findings with respect to plaintiff's alleged cervical and lumbar injuries by merely indicating that "range of motion . . . was full" and "straight leg raising test was negative bilaterally", Dr. Kolesnik provided no more than a conclusory statement that failed to set forth the objective tests he performed in arriving at his conclusions, or quantify the results of those tests (see Gamberg v Romeo, 289 AD2d 525; see also Mosheyev v Pilevsky, ___AD2d___, 2004 N Y Slip Op 00233) . Accordingly, his affirmation may not be considered by the court in determining whether defendants have met their [*4]burden on this motion.
However, based upon Dr. Paul's legally sufficient affirmation, defendants have met their initial burden. Accordingly, it becomes incumbent upon plaintiff to establish that there are triable issues of fact as to whether he suffered "serious injuries" (see Jackson v United Parcel Serv., 204 AD2d 605; Bryan v Brancato, 213 AD2d 577). In this regard, plaintiff must submit quantitative objective findings in addition to opinions as to the significance of her injuries (see Grossman v Wright, 268 AD2d 79).
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
In opposition to defendants' motion, plaintiff has provided the affirmations of Irving Friedman, M.D., Lourdes Esteban, M.D., and the sworn affidavit of Carey Skorski, D.C.
Affirmation of Dr. Friedman
In his affirmation dated August 21, 2003, Dr. Irving Friedman states that he is a board certified neurologist as well as a Diplomate of the American Board of Neurophysiology. He further states that he saw plaintiff on several occasions for treatment, medical follow-ups, and a medical assessment..
Dr. Friedman first saw plaintiff on September 11, 2000. He recounted her demeanor as tearful and depressed. On initial examination, he reported that ecchymosis about the left anterior thigh was present. There was 1+ crepitus at the left knee patella and pain with forced flexion extension of the left knee. Walking on her toes and heels caused a pulling sensation in the left anterior thigh region. Dr. Friedman noted that 2+ spasms and pain were present in the paracervical and paralumbar regions. His clinical diagnosis at the time was post-concussion syndrome. He indicated that plaintiff was at the time totally incapacitated both emotionally and physically. He placed her on a course of physical therapy, a neurological workup and reassessment plan was instituted, and MRI and EMG tests were arranged.
On September 19, 2000, plaintiff appeared for a neurologic reassessment. At that time, Dr. Friedman noted that severe interscapular tenderness percussion pain was present. Forward flexion was guarded to 45 degrees out of 90.
Dr. Friedman reported that as of November 9, 2000, plaintiff remained with daily cervical and lumbar spasms. She also remained with percussive pain in the bilateral interscapular regions. Her grip was diminished in both hands. Nerve conduction - EMG studies performed of both upper extremities by Dr. Friedman on November 16, 2000 showed a "[s]ubacute denernation (sic) bilateral C4-C5-C6 pattern."
On January 17, 2001, forward flexion remained guarded to 45 degrees out of 90 degrees; straight-leg raising was positive bilaterally at 30 degrees out of 90 right and left. An MRI conducted on January 23, 2001 yielded the initial impression "central subligamentous herniated nucleosis puposus at L5-S1". Dr. Friedman's review of the MRI films on both sagittal and axial views led him to conclude that there was a definite herniated disc at L5-S1 with thecal sac impingement, as well as a second herniated disc at the L4-L5 level.
In addition to reviewing plaintiff's physical therapy records, Dr. Friedman reviewed chiropractic reports of Dr. Skorski, and an updated neurological consultation by Dr. Esteban based on an examination of January 26, 2002, and subsequent follow-up notes dated August 21, 2002 and September 9, 2002.At his last examination of plaintiff on July 9, 2003, Dr. Friedman reported that there was 2+ spasm and that multiple trigger points to deep palpation were present in the paracervical [*5]and paralumbar regions. Plaintiff's deep tendon reflexes were diminished on both upper extremities. She was hypesthetic in a bilateral ulnar/lower plexus distribution to pin prick. Her gait was visibly antalgic. She was only able to forward flex 60 degrees out of 90, i.e., a 33% deficit. She was only able to squat 66% of the normal distance. Straight leg raising [FN3] was positive bilaterally at 60 degrees out of 90, i.e., a 33% deficit. Cervical flexion and extension were guarded to 30 degrees out of 45, i.e., a 33% deficit. Cervical rotation was guarded to 70 degrees out of 90 right and left, i.e., a 22% deficit. Walking on her heels and toes caused a pulling symmetric sensation in both gluteal and both hamstring regions.[FN4]
Based upon all of the foregoing, Dr. Friedman diagnosed the plaintiff as suffering from, inter alia:
 "Post-traumatic disc herniations L4-L5 and L5-S1 documented on MRI of January 25, 2001 and personally reviewed;
 EMG documented bilateral C4-C5-C6 nerve root irritation based on EMG of November 6, 2000 and personally performed;
 Chronic post-traumatic lumbosacral [and cervical] myofascitis/spasm[s]."
In conclusion, Dr. Friedman opined that plaintiff remained grossly symptomatic two years and ten months following her injuries; that within a reasonable degree of medical certainty, the noted neurospinal deficits are directly and causally related to the injuries sustained on September 7, 2000; that her prognosis is poor; and the disc herniations, spasms and limitation of range of motion at the cervical and lumbar spines are permanent in nature.
Affidavit of Dr. Skorski
Dr. Carey Skorski stated that plaintiff was under his care from January 10, 2001 to August 31, 2001. His affidavit is based on his examination of plaintiff conducted on July 9, 2003. Visual inspection demonstrated a patient moderately guarded in certain movements of the neck, the upper torso, and at the waist. Her gait was antalgic. Loss of range of motion was noted in the cervical and lumbar spines. Reductions in cervical ranges of motion were found in flexion (35/60), extension (35/50), left lateral flexion (35/40), left rotation (60/80) and right rotation (60/80). Reductions in lumbar ranges of motion were found in flexion (50/90), left rotation (20/30) and right rotation (20/30). Orthopedic testing was positive for bilateral Jackson depression, Kemps, Laseques, Gaenslens and Braggards tests and foraminal encroachment, with nerve root irritation of the cervical spine and lumbar spine.[FN5] He reviewed the plaintiff's MRI films and observed the two disc herniations as were discussed by Dr. Friedman in his affirmation.
Dr. Skorski arrived at a diagnosis of herniated lumbar discs at L4-L5 and L5-S1. His [*6]prognosis for plaintiff is guarded. He opines that within a reasonable degree of medical certainty, plaintiff's present condition is directly related to the subject accident and is permanent.
Affirmation of Dr. Esteban
Dr. Lourdes Esteban, a neurologist and Diplomate of the American Board of Neurology, states in her affirmation dated September 8, 2003, that she first saw plaintiff on June 26, 2002 for evaluation of the sequelae of the injuries she sustained in the subject accident. In response to plaintiff's complaints of severe headaches, Dr. Esteban reviewed the films of plaintiff's cervical MRIs, which showed a reversal of the normal cervical spine lordosis. She opines that within a reasonable degree of medical certainty, the cervical spine injury sustained on September 7, 2000 is the competent cause of her headaches, and that the symptomatology will persist.
DISCUSSION
In order to establish that she suffered a permanent consequential limitation of use of a body organ or member, and/or a significant limitation of use of a body function or system, plaintiff must show more than "a mild, minor or slight limitation of use" and is required to provide objective evidence in addition to medical opinions of the extent or degree of the limitation and its duration (see Oberly v Bangs Ambulance, Inc., 96 NY2d 295; Grossman v Wright, 268 AD2d 79; Booker v Miller, 258 AD2d 783; Burnett v Miller, 255 AD2d 541; Beckett v Conte, 176 AD2d 774). Resolution of the issue of whether a serious injury was sustained involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part (see Toure v Avis Rent-a-Car Sys., Inc., 98 NY2d 345, 353). In the alternative, plaintiff must prove that she sustained a medically determined injury or impairment which prevented her from performing substantially all of the material acts which constituted his usual and customary daily activities for 90 out of the 180 days immediately following the accident (see Gaddy, 79 NY2d at 958; Licari v Elliott, 57 NY2d 230).
Although a bulging or herniated disc may constitute a serious injury within the meaning of Insurance Law § 5102 (d), a plaintiff must provide objective evidence of the extent or degree of the alleged physical limitations resulting from the disc injury and its duration (Fauk v Jenkins, 301 AD2d 564, 564; Duldulao v City of New York, 284 AD2d 296, 297). In order to prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury (Toure, 98 NY2d 345, 350; Dufel v Green, 84 NY2d 795, 798; Lopez v Senatore, 65 NY2d 1017, 1020). An expert's qualitative assessment of a plaintiff's condition may also suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body, organ, member, function or system (Toure, 98 NY2d at 351).
In Fauk v Jenkins (301 AD2d 564), the Appellate Division, Second Department, reversed the trial court's granting of summary judgment dismissing the complaint. In setting forth its basis for reversal, the Court stated:

"However, the affidavit of Dr. Leo Batash, which the plaintiff submitted in opposition to the motion, raised a triable issue of fact (citation omitted). That affidavit stated that the plaintiff suffered traumatically-induced bulging discs at the L2-L3, L3-L4, and L4-L5 regions of the lumbar spine and a herniated disc at the L5-S1 region, [*7]which were the cause of plaintiff's pain and the reason plaintiff had a restricted motion of 25-30%. This conclusion was based, inter alia, on a review of an MRI report, which was also submitted. The plaintiff's evidence raised a triable issue of fact as to the existence of a serious injury, which is for the jury to determine (see Puma v Player, 233 AD2d 308)"
(see also Grossman v Wright, 268 AD2d 79, 84; Risbrook v Coronamos Cab Corp., 244 AD2d 397, 398 [where the Appellate Division, Second Department, noted the value of a straight-leg-raising test result "which case law has consistently treated as objective evidence of serious injury (citation omitted)"]).
The affirmations of Dr. Friedman and Dr. Esteban, as well as the affidavit of Dr. Skorski, are all based upon recent examinations, and all enumerate, in detail, the objective tests each performed and the results each obtained in reaching their respective diagnoses and prognoses. Thus, although the affirmed report of Dr. Paul is sufficient to meet defendants' initial burden of establishing a prima facie case that plaintiff's alleged injuries did not meet the serious injury threshold under Insurance Law § 5102 (d) (see Gaddy,, 79 NY2d at 956-957), plaintiff proffered evidence that raises issues of material fact as to whether she sustained a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system" (see Toure v Avis Rent A Car Systems, Inc., 98 NY2d 345). The opinions of all three of plaintiff's physicians reached beyond plaintiff's subjective complaints. Such opinions were supported by objective medical evidence and test results and ascribed a specific percentage to the loss of range of motion or neurological deficit allegedly sustained by plaintiff (see Lichtman v Heit, 300 AD2d 242; Paternoster v Drehmer, 260 AD2d 867). Considered in a light most favorable to plaintiff, the evidence is sufficient to defeat defendants' motion for summary judgment (see Lopez v Senatore, 65 NY2d 1017, 1020). Therefore, the defendants' motion is denied.
The foregoing constitutes the decision and order of the court.
Dated: March 2, 2004
 E N T E R,
 J. S. C.
Footnotes

Footnote 1:Insurance Law § 5102 (d) defines "serious injury" as "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred and eighty days immediately following the occurrence of the injury or impairment." 

Footnote 2:As an initial matter, the court rejects the plaintiff's contention that the defendants' motion should be denied as it is based on an unpleaded affirmative defense contained in § 5102 (d) and § 5104 of the Insurance Law. Use of an unpleaded defense in a summary judgment motion is not prohibited as long as the opposing party is not taken by surprise and does not suffer prejudice thereby (see Rosario v City of New York, 261 AD2d 380, 380; Lynbrook Glass & Architectural Metals Corp. v Elite Assocs., 225 AD2d 525, 527; Seaboard Sur. Co. v Nigro Bros., 222 AD2d 574; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3212:11, at 319). In its opposition to the motion at bar, plaintiff has failed to set forth any facts demonstrating such prejudice or surprise.

Footnote 3:Dr. Friedman indicated that straight leg raising is a test used to corroborate the presence of severe sprain/strain or disc lesion of the lumbar spine. If pain is elicited from the patient when the leg is lifted off the examination table from the supine position, it is considered a positive test.

Footnote 4:Dr. Friedman indicated that a positive heel/toe walking test indicates the presence of lumbosacral spine disc pathology.

Footnote 5:Dr. Skorski reviewed the means by which he conducted Kemp's test, and noted that a positive finding indicates disc protrusion or prolapse.