[788 NYS2d 56]

AUDLEY BENT et al., Appellants, v ALBERT S. JACKSON et al., Respondents.

First Department, January 4, 2005

### APPEARANCES OF COUNSEL

*Pollack, Pollack, Isaac & DeCicco*, New York City (*Christopher J. Crawford* and *Brian J. Isaac* of counsel), and *Corpina, Piergrossi, Overzat & Klar, LLP*, for appellants.

*Brand & Brand*, Garden City (*Charles R. Gueli* of counsel), for Albert S. Jackson and others, respondents.

### OPINION OF THE COURT

MARLOW, J.

In the context of this appeal, we engage in the perennial debate over the issue of whether a plaintiff's evidence of personal injury meets the statutory threshold set by Insurance Law § 5102 (d), "an elusive standard that all too frequently escapes facile and final resolution" (*Brown v Achy*, 9 AD3d 30, 31 [2004]).

Defendants established a prima facie entitlement to summary judgment by submitting evidence demonstrating that plaintiff did not sustain a serious injury (*see* Insurance Law § 5102 [d]). Defendants submitted affidavits of two medical doctors who, upon examining the injured plaintiff, concluded that, although there were positive MRI findings, plaintiff had normal range of motion in his cervical spine, lumbosacral spine, right shoulder and right knee (*see Noble v Ackerman*, 252 AD2d 392 [1998] [existence of herniated disc does not per se constitute serious injury]). The burden then shifted to plaintiffs to raise a triable issue of fact that a serious injury was sustained within the meaning of the Insurance Law (*see Gaddy v Eyler*, 79 NY2d 955 [1992]), in this case a "significant limitation of use of a body function or system" (Insurance Law § 5102 [d]). Failure to raise a triable issue of fact requires a court to grant summary judgment and to dismiss the complaint (*see Licari v Elliott*, 57 NY2d 230 [1982]). Plaintiffs have failed to do so, and we therefore affirm the motion court's order dismissing the complaint.

Initially, we agree with the dissent that the motion court erroneously rejected the positive results of the injured plaintiff's MRI examinations. Indeed, defendants initially presented these results on their motion for summary judgment. Thus, they were properly before the motion court (*see Brown*, 9 AD3d 30 [2004],

*supra*; *Gonzalez v Vasquez*, 301 AD2d 438 [2003]; *see also Ayzen v Melendez*, 299 AD2d 381 [2002]; *Pietrocola v Battibulli*, 238 AD2d 864 [1997]). However, we respectfully disagree with the dissent's position that plaintiffs' other evidence, coupled with these positive findings, raises a triable issue of fact about serious injury.

Other than an initial evaluation of the patient on April 26, 2000, nine days after the accident, a follow-up visit two months later, on June 26, and a series of tests conducted in July, August and October of that year, the record is devoid of any competent evidence of this plaintiff's treatment.[1] In order to raise a triable issue of fact, plaintiffs' claim that range of motion is limited must be sustained by objective medical findings that are "based on a recent examination of the plaintiff" (*Grossman v Wright*, 268 AD2d 79, 84 [2000]; *cf. Verderosa v Simonelli*, 260 AD2d 293 [1999] [doctor's opinion of significant limitations based upon recent personal examination of plaintiff]).

In addition to the lack of a recent medical examination, the record offers no competent evidence of any examination of the injured plaintiff after June 26, 2000 (*see* n 1). Indeed, in his April 23, 2001 report, Dr. Marini neither indicates he examined this plaintiff that day, nor describes any current objective testing or significant range-of-motion restriction. As for Dr. Yaffe's report of July 7, 2000, it adds no substantive medical information to support plaintiffs' claim.[2]

Although we have held that a gap in treatment goes to the weight of the evidence, not its admissibility (*see Brown v Achy, supra*), here there is not merely a gap in treatment. Rather, the record presents an utterly unexplained cessation of treatment. While plaintiffs' doctor's reports refer to a course of physical therapy, we find no competent evidence in the record detailing the course of this therapy or its frequency. Thus, based on this record, there was an initial examination, a follow-up examination, and several medical tests. There is no proof of any course of treatment or any explanation for its termination (*compare*

---

**1.** While defendants pinpoint the last examination on April 23, 2001, there is no indication in the treating doctor's report of same that a physical exam was actually conducted that day. Rather, the report merely describes the results of previous examinations conducted a year earlier on April 26 and June 26, 2000 and test results. In any event, even assuming an exam was conducted on April 23, 2001, there is still an unexplained gap in treatment.

**2.** We consider Dr. Yaffe's report not because it was incorporated by reference by Dr. Marini in his affirmation in opposition, but rather because defendants initially relied on it in support of their motion.

*Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 355 [2002] [Court of Appeals rejected defendant's contention that plaintiff failed to establish serious injury based on doctor's trial testimony which relied on four-year-old exam where plaintiff's doctor concluded that plaintiff's injuries were permanent and there was no benefit to continued treatment]; *see also Brown*, 9 AD3d at 34 [plaintiff's chiropractic opinion that plaintiff was treated until she reached maximal medical improvement minimally sufficient to explain gap in treatment]).

We need not reach the question of whether an unexplained gap in treatment, alone, can defeat a claim of serious injury because in the case at bar the medical proof itself is either incompetent or insufficient to raise a triable issue of fact of serious injury.

Furthermore, although the injured plaintiff's MRIs revealed several positive findings, in order to raise a triable issue of fact, these positive findings must be accompanied by objective findings of either a specific percentage of the loss of range of motion or a sufficient description of "the 'qualitative nature' of plaintiff's limitations 'based on the normal function, purpose and use of the body part' " (*Toure*, 98 NY2d at 353). Plaintiffs' submissions have done neither. While plaintiff's doctor does ascribe the degree of range of motion in certain areas to some objective testing, he does not compare his patient's degrees of range of motion with a normal range of motion. Indeed, in Dr. Marini's last report dated April 23, 2001, he gives no *contemporaneous* range of motion restrictions at all. Accordingly, plaintiffs failed to establish the extent of physical limitation by designating a numeric percentage to range-of-motion loss or by providing normal range-of-motion degrees in order to ascertain the percentage of this patient's restriction of movement (*see Shinn v Catanzaro*, 1 AD3d 195 [2003]). We therefore disagree with the dissent's statement that plaintiff's doctor's reports contained "measurable diminution" of "range of motion." Had the doctor provided the degrees of normal range of motion, then this plaintiff's range of motion limitations would have been "measurable." In any event, "measurable diminution" is not the Insurance Law standard. Rather, plaintiffs are required to present proof of a "significant limitation of use of a body function or system" (Insurance Law § 5102 [d]).

This failure of proof is not fatal, as plaintiffs may also establish a significant limitation of range of motion if the doctor describes the qualitative nature of the patient's limitations

based on normal function, purpose and use. Here, the doctor offers no such evidence. Rather, the doctor's opinion, that the injured plaintiff's limitation of range of motion and permanency affect "his daily living as well as his employment" and will cause "ensuing functional disabilities [a]ffecting [plaintiff] for the rest of his life," is conclusory and is clearly tailored simply to meet statutory requirements. Accordingly, plaintiffs failed to raise genuine issues of fact, and the motion court properly granted defendants' respective motions to dismiss the complaint (*see Lopez v Senatore*, 65 NY2d 1017 [1985]).

Accordingly, the order of the Supreme Court, Bronx County (Yvonne Gonzalez, J.), entered April 17, 2003, which granted defendants' respective motion and cross motion for summary judgment dismissing the complaint on the ground that plaintiff Audley Bent did not sustain a serious injury pursuant to Insurance Law § 5102 (d), should be affirmed, without costs.

SAXE, J.P. (dissenting). The majority continues a recent pattern of requiring injured plaintiffs to establish far more than that which is required by the language of Insurance Law § 5102 (d) and existing case law in order to be deemed to have passed the serious injury threshold.

I would reverse the grant of summary judgment to defendants and reinstate the complaint. Plaintiffs met their burden of producing competent proof sufficient to create an issue of fact as to whether the injuries sustained by plaintiff Audley Bent qualify as serious injury as that term is defined in Insurance Law § 5102 (d).

The definition of serious injury in Insurance Law § 5102 (d) includes: "permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system."

The affirmation of the injured plaintiff's treating physician, Robert A. Marini, incorporating four reports, three of his own and one by another physician, Michael G. Yaffe, contained sufficient factual assertions to establish serious injury. Notably, the last of Dr. Marini's reports set forth the results of objective testing and concluded that as a result of the subject motor vehicle accident, plaintiff had sustained injuries to the cervical spine including disc herniations, injuries to the lumbosacral spine with disc involvement, and injuries to the right shoulder, all of which have "caused permanent and consequential limitations." He recited that these conclusions were supported by various

test results, including nerve conduction velocity studies, needle electrodiagnostic testing and MRI scans, as well as the results of his own and another physician's physical examinations of plaintiff involving range-of-motion studies, showing a substantially diminished range of motion in numerous respects.

In dismissing the action, the motion court erred in rejecting out of hand much of the submitted evidence, improperly refusing to give any evidentiary weight to unsworn medical reports, such as that of consultant physician Dr. Yaffe, and Dr. Marini's report regarding the results of an MRI examination, erroneously requiring that the MRI report be sworn to. The test results reported in the treating physician's report constituted objective evidence supporting the diagnosis of herniation and other permanent structural damage causing ensuing permanent functional disabilities.

The unsworn nature of a technician's report upon which a physician relies in assessing the patient's condition does not render the report invalid for purposes of opposing a summary judgment motion. In *Brown v Achy* (9 AD3d 30 [2004]), this Court reversed a grant of summary judgment which had been based upon a purported failure to show that the plaintiff had sustained a serious injury. We explained there that straight-leg raising tests, together with positive MRI and nerve conduction velocity tests, constitute objective evidence of serious injury, and that the unsworn nature of the MRI report and nerve conduction velocity study results did not avail the defendants (*id.* at 32).

While a physician's affidavit may lack probative value where it neither attached a copy of an MRI report nor indicated that the physician reviewed the actual MRI films, and where it failed to indicate that the physician himself performed any objective tests supporting his conclusions (*see Sherlock v Smith*, 273 AD2d 95 [2000]), here plaintiff's physician has submitted an affirmation incorporating his reports by reference, in which reports he states that MRIs were obtained and that they revealed various specified injuries. The reported test results have sufficient evidentiary weight for purposes of a summary judgment motion (*see Ayzen v Melendez*, 299 AD2d 381 [2002]). A formal recitation that the physician has reviewed the MRI films permits reliance on the MRI.

Dr. Marini's findings and conclusions were sufficient, and sufficiently supported, to create a question of fact as to whether plaintiff's injuries were permanent or sufficiently significant to

meet the serious injury threshold. The physician reported actual, permanent injuries, ascertained by objective medical testing, including disc herniations and injuries to the lumbosacral spine with disc involvement, consistent with the injuries and complaints that plaintiff initially presented with shortly after the accident: progressive discomfort to the cervical spine, and progressive lower back pain with difficulty bending, extending and standing for long periods of time. He also reported restrictions in plaintiff's range of motion (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 355 [2002]; *Aguilar v N.Y.C. Water Works*, 298 AD2d 245 [2002]).

In order to affirm the dismissal of plaintiffs' claim—while rejecting the motion court's reasoning—the majority imposes upon a plaintiff opposing a "serious injury" challenge an additional new burden: now, the plaintiff must either demonstrate that he is continuing to receive ongoing treatment or explain any cessation of treatment, and a claim of lost range of motion must be expressed in a particular numerical manner. This requirement goes beyond what is required to satisfy section 5102 (d).

If plaintiff establishes that the accident resulted in a permanent injury such as a herniated disc, and a physician has confirmed that due to that injury plaintiff is unable to do things he was formerly able to do, and if there is no treatment that cures the injury, that is enough. He need not establish that he is continuing to receive "treatment," nor should he have to do more than explain that regular visits to therapists had not provided relief. While prior cases have referred to a need for a "recent" examination of a plaintiff (*see e.g. Grossman v Wright*, 268 AD2d 79, 84 [2000]; *Verderosa v Simonelli*, 260 AD2d 293 [1999]), in no such case has a plaintiff's lawsuit been dismissed despite objective testing demonstrating permanent injuries and a diminution of range of motion, based upon the passage of less than two years without a repetition of the examinations, tests and assessments. In *Grossman*, the plaintiff relied merely upon the unsworn assertions of a chiropractor that failed to set forth the objective tests, if any, he performed in arriving at his conclusions concerning the plaintiff's restrictions in motion (*see* 268 AD2d at 85). In *Kauderer v Penta* (261 AD2d 365, 366 [1999]), the affidavit of the plaintiff's chiropractor not only referred to an examination performed almost three years earlier, but failed to establish that any objective tests were performed to support his findings. In *Smith v Askew* (264 AD2d 834 [1999]), the

plaintiff submitted nothing explaining what treatment, if any, he received from the time of the accident to the time of an examination that took place eight years later; in addition, the expert did not indicate what objective tests were performed in support of his conclusions regarding the plaintiff's range-of-motion restrictions.

A plaintiff, having undergone numerous examinations and testing over a period of months or years, whose treating physician has ascertained that an objectively verified physical injury such as a herniated disc is the cause of the pain and limitation reported by the patient and verified by testing, which symptoms began following the accident at issue, is entitled to a trial on the issue of whether he has suffered a serious physical injury under Insurance Law § 5102. He need not continue to report in for a repetition of the same testing and examinations in order to keep confirming that the same permanent injury remains present.

We require that a plaintiff offer objective medical verification of a claim of diminishment in range of motion; however, this Court should not dismiss plaintiffs' claim based upon the expert's manner of expressing the presence of a measurable diminution in the injured plaintiff's range of motion. The majority relies upon the discussion in *Toure* (98 NY2d at 350), where the Court explained that a claim of serious injury may be substantiated by "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion" or by a *qualitative* assessment comparing the plaintiff's limitations to the normal function which the plaintiff claims to be limited.

Here, plaintiffs' expert reported, among other findings, plaintiff's diminished range of motion, using the following type of language:

- "Cervical spine: diminished range of motion to right lateral rotation at 35°, left lateral rotation at 40°.

- "Right shoulder: diminished range of motion to forward flexion at 165°, abduction at 105°, with diminished internal rotation.

- "Lumbosacral spine: diminished range of motion to forward flexion at 65° secondary to spasm with extension at 10°, right lateral rotation is 10°, left lateral rotation is 10°."

In view of this specificity, the physician's failure to designate a

numeric percentage to the loss in range of motion should not be viewed as a fatal failure of proof. The expert measured the extent of plaintiff's range of motion, and characterized it as a diminution from plaintiff's normal range of motion. Under these circumstances, the lack of a measurement of *how* diminished the range of motion is, or some other characterization of the manner in which these measurements constitute a diminution, do not supply grounds for the dismissal of plaintiffs' claim of serious injury. The question of whether the reported limitation in motion should be considered "significant" should be left to the jury, as it would be if the physician had reported, for example, a 15 degree loss of range of motion.

The *Toure* court explained that its requirement of a quantitative or qualitative assessment by the plaintiff's expert is to avoid speculative conclusions that cannot be "tested during cross-examination, challenged by another expert and weighed by the trier of fact" (*id.* at 351). Here, plaintiffs' expert provided objective measurements of that which he observed; the difference between those measurements and that which was normal for plaintiff would, in any event, be based upon information provided by plaintiff himself.

Moreover, this Court has accepted a similar type of assessment in *DaSilva v Storz* (290 AD2d 288 [2002]), where a serious injury claim was upheld based upon the reports of the plaintiff's experts that bulging and herniated discs were causally related to the accident, which injuries "resulted in a significant and quantified limitation in her range of motion." The record in that case reflects that the plaintiff's expert assessed the plaintiff's forward flexion as limited to 80 degrees, her rotation as limited to 30 degrees, and her extension as limited to 15 degrees.

The objective injuries and the range of motion limitations discovered by the physical testing, along with the other positive test results, constituted sufficient supporting objective medical proof to defeat the motion for summary judgment. Accordingly, I would reverse the dismissal of the action.

SULLIVAN, WILLIAMS and FRIEDMAN, JJ., concur with MARLOW, J.; SAXE, J.P., dissents in a separate opinion.

Order, Supreme Court, Bronx County, entered April 17, 2003, affirmed, without costs.