■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICARDO A. CARRILLO, Appellant. [686 NYS2d 114] —Spain, J. Appeal from a judgment of the County Court of Clinton County (Halloran, J.), rendered July 8, 1996, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the first degree.

In May 1995, US Border Patrol Agent Mark Henry observed defendant backing up his vehicle on Interstate Route 87 approximately 100 yards from the United States-Canadian border in the Town of Champlain, Clinton County. Henry stopped the vehicle and requested and received identification from defendant including a New York driver's license; he also received defendant's consent to open the trunk of the vehicle. Henry subsequently determined that the passengers in the vehicle were defendant's wife, niece and child. Defendant's wife was unable to produce a green card or any other documents evidencing her legal presence in the United States. Based upon the wife's lack of documentation and defendant's admission that he had smuggled her into the country in 1993, Henry requested and received defendant's consent to follow him to the border patrol station in order to make further inquiries regarding her status. At the station Henry directed Agent Brian Jefferson to conduct a record check which, ultimately, failed to reveal any evidence of the wife's legal status.

Thereafter, Henry directed Jefferson to arrest defendant's wife and search defendant's vehicle for further documentation. Jefferson then obtained defendant's permission to search the vehicle; upon searching the trunk of the car, Jefferson observed a package wrapped in Christmas paper. Jefferson opened the package revealing a large plastic bag with a white, powdery

substance in an amount equal to the size of a softball. Jefferson entered the station and confronted defendant with the bag and asked him what it contained; according to Jefferson, defendant stated that it was cocaine. Jefferson then arrested defendant and placed him in a cell; subsequently, the substance was tested and determined to be cocaine. Thereafter, Jefferson removed defendant from the cell and obtained defendant's signature on a form stating that he had read and understood his *Miranda* rights and stating that no threats or pressure had been used against him. According to Jefferson, when he inquired how much cocaine there was, defendant stated "500 grams", and upon further inquiry indicated this was equal to one pound of "high quality" cocaine.

Later that evening defendant indicated that he wanted to talk to Henry. According to Henry, when given the opportunity and without prompting, defendant stated that he had purchased the cocaine in Brooklyn. Henry asked Jefferson how much cocaine was present and defendant spontaneously stated that there was "500 grams", "a pound". Early the next day, defendant signed an agreement with a senior investigator from the State Police indicating that he would cooperate with the police. The investigator subsequently testified that he offered no promises to defendant in return for his cooperation other than agreeing not to arrest his wife on the drug charges.

In August 1995, defendant was indicted for criminal possession of a controlled substance in the first degree. Subsequently, defendant was granted, *inter alia*, a *Huntley* hearing based on his claims that his statements were involuntary, a product of police threats against his family, in violation of defendant's *Miranda* rights and made in return for an unfulfilled promise by law enforcement to reduce the charge. County Court (Lewis, J.) denied defendant's motion to suppress his statements. Following a jury trial, defendant was convicted of criminal possession of a controlled substance in the first degree. Thereafter, County Court imposed the most lenient permissible prison sentence of 15 years to life, and imposed a fine of $25,000. Defendant appeals.

We affirm. Initially, we conclude that County Court properly denied defendant's motion to suppress all statements and all evidence seized. The record reveals that defendant was stopped by Henry within 100 yards of the United States-Canadian border; Henry testified that his reasons for stopping defendant's vehicle were twofold: (1) that he had witnessed defendant committing a traffic violation by backing up on Interstate Route 87, and (2) the nature of the infraction in such close proximity

to the border made him suspect that smuggling of aliens might be involved. In stops by border patrol agents, "officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country" (*United States v Brignoni-Ponce*, 422 US 873, 884). Further, a border patrol agent, upon such a stop, "may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause" (*id.*, at 881-882).

In our view, Henry had reasonable suspicion sufficient to warrant the stop and question defendant and his passengers. Moreover, Henry obtained consent to search the trunk and, upon the failure of defendant's wife to establish her immigration status, Henry had reasonable suspicion that defendant's wife was an illegal alien, thereby justifying his request for defendant, who was transporting an alleged illegal alien, to follow him to the station, a request to which defendant voluntarily consented (*see*, *People v Edmund*, 169 AD2d 195, 202, *lv denied* 78 NY2d 1075). County Court (Lewis, J.) properly concluded that defendant's statements to Jefferson and Henry were neither in response to an investigatory question nor preceded his voluntary and knowing waiver of his *Miranda* rights.

We also conclude that County Court properly refused to allow the cooperation agreement between defendant and the State Police into evidence. At trial, the court allowed defendant to present evidence of the agents' alleged coercion and threats during the time period in which those statements were made. The court, however, refused to allow the cooperation agreement into evidence, finding it irrelevant to the determination of the voluntariness of defendant's statements made at least seven hours earlier. It is well settled that a defendant has a constitutional right to confront his or her accusers, including the right to submit evidence tending to prove that a witness has fabricated his or her testimony (*see*, *People v Hudy*, 73 NY2d 40, 56-57).

Pursuant to CPL 60.45 (2) (b) (i), a confession is rendered involuntary when it is obtained "by means of any promise or statement of fact, which * * * creates a substantial risk that the defendant might falsely incriminate himself". In addition, a jury may properly consider any evidence bearing on the voluntariness of a defendant's inculpatory statement (*see*, *People*

*v Fitzgibbon*, 166 AD2d 745, 747, *lv denied* 77 NY2d 838).
County Court concluded that any evidence relating to promises
made subsequent to defendant's statements to Jefferson and
Henry, including the cooperation agreement, was not relevant
and thus inadmissible. It is not an abuse of discretion for a
trial court to exclude evidence that is cumulative or remote in
time to the incident at issue (*see, People v Levy*, 186 AD2d 66,
67, *lv denied* 80 NY2d 975). Notably, the court specifically
instructed the jury that the People carried the burden of proof
with regard to both the voluntariness of the statements and
the issue of whether the statements were, in fact, made. Ad-
ditionally, defendant was permitted to introduce evidence
regarding the alleged coercion by the agents at the time he
made the inculpatory statements. Therefore, County Court
properly denied admission of the cooperation agreement.

We also reject defendant's contention that he did not receive
effective assistance of counsel. "To prevail on appeal, defendant
must have established from the record the absence of strategic
or other legitimate explanations for counsel's alleged failures"
(*People v Ahl*, 243 AD2d 985, 987, *lv denied* 91 NY2d 868 [cita-
tion omitted]; *see, People v Garcia*, 75 NY2d 973, 974). Here,
the record indicates that defense counsel was assiduous in his
defense throughout the entire proceeding. Indeed, the record
does not support a claim of ineffective assistance of counsel.

Finally, we reject defendant's contention that the $25,000
fine imposed on him pursuant to Penal Law § 80.00 was
improper in that County Court failed to set forth its consider-
ations justifying the amount. The sentencing minutes reveal
that defendant failed to object to both the imposition of a fine
or its amount, and, therefore, defendant has failed to preserve
the issue for consideration by this Court (*see, People v Davila*,
238 AD2d 625, 626). Nevertheless, were we to consider the
merits of defendant's contention, we consider it unavailing.
The record reveals that, prior to sentencing, the People submit-
ted a letter and supplemental affidavit to County Court detail-
ing defendant's financial status and history and the court
specifically stated that it had read the letter and the presen-
tence report. In our view, the court's review of these docu-
ments without specific findings is sufficient under Penal Law
§ 80.00 (1) (c). Notably, defendant's profit or gain, if any, from
the crime charged was not at issue in this case (*see*, Penal Law
§ 80.00 [3]).

We have reviewed defendant's remaining contentions, includ-
ing the denial of his request for a missing witness charge, and
find them to be without merit.

Cardona, P. J., Mercure, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed.