OPINION OF THE COURT
Kathleen M. Rogers, J.
*622 Findings of Fact
On August 30, 2004 this court conducted a suppression hearing for defendant Morrow in connection with a vehicle stop and ensuing search of the car. Defendants were found to be in possession of a handgun and two stolen rifles in the vehicle. Further investigation led to burglary, robbery and conspiracy charges as well. The court makes the following findings of fact and conclusions of law.
On May 20, 2004 Senior United States Border Patrol Agent Jovan Germano was on duty in a marked Border Patrol vehicle at 1:30 a.m., and was traveling eastbound on State Route 37, parallel to the United States-Canadian border. Germano passed a westbound 2004 white Dodge Stratus with Texas license plates. Germano turned around and followed the Dodge. The Dodge made a sharp left turn onto County Route 28, then took a right turn onto the Arnold Wagner Road, then turned right onto State Route 68, heading towards the City of Ogdensburg and an intersection with State Route 37, the same route on which the Dodge was first seen by Germano. During this time there were no other vehicles between Germano and the Dodge; he did not have his flashing lights turned on. Germano described the Dodge’s route as being essentially a semicircle.
Agent Germano pulled over the Dodge by engaging his emergency lights near the intersection of State Routes 37 and 68. Shortly before stopping the Dodge, Germano made a radio call for backup in stopping a suspicious vehicle, and asked for a check on the license plate registration. As Germano approached the driver’s side of the stopped Dodge, he saw that there were two people inside. He spoke with the driver, LaRose, and asked for identification. LaRose presented a Tennessee driver’s license identifying him as LaRose. Morrow did not have identification, but told Germano his name and that he was a United States citizen. Germano asked the two men why they took the indirect route they had used since it would have been a straighter route to the same location simply to continue on Route 37. LaRose answered that he didn’t know why he had chosen that route. Germano asked where they had been, and they said that they were at the Reservation, playing bingo. LaRose then said he was going to visit a woman who lived on the Arnold Wagner Road but could not give her name.
Germano described both defendants as nervous, trembling and shaking during the conversation. Morrow was very quiet and said almost nothing after stating that he had no identification on him.
*623 From radio backup Germano learned that the vehicle was a rental car from Houston, Texas. It was not registered to Morrow. Germano asked LaRose what was in the trunk, and he said that his wife’s hunting rifles were there. Germano asked to look in the trunk, and LaRose said he could do so. In the trunk he found two bolt action rifles and a black hard-sided case. Germano asked LaRose what was in the case, and LaRose said “probably paraphernalia aiid pipes.”
Border Patrol Agent Reed arrived as backup and was also standing beside the Dodge at this point. Reed asked if there were other weapons in the vehicle, and LaRose said, “No.” Morrow was seated in the passenger seat. When Reed was asking about the interior of the vehicle, he looked in the center console, and there discovered a 9 millimeter semiautomatic handgun and ammunition rounds loaded in a magazine beside it. Besides the gun and ammunition the agents also found a pair of rubber gloves and a partial roll of duct tape. When asked, neither of the men could produce a permit for the handgun. Morrow denied having any ownership interest in the gun.
On cross-examination Germano said that the Dodge was not going unusually slow though he did not know the actual speed. His curiosity was piqued because he recognized the license plate as being from Texas, having lived there himself, and found it quite unusual to see a Texas plate on a car traveling near the border, late at night on a midweek night. From his own recent experience with night-time shifts for the Border Patrol, he had observed that most traffic at that hour was local. This is what made him turn his vehicle and follow the Dodge. Germano followed the Dodge, he estimated, for about two miles. He believed that the Dodge turned onto County Route 28 quite suddenly as though it were a last-minute decision on the driver’s part. He said that the turn was not a normal, smooth turn. Germano did not observe any apparent traffic violations, and was not trained to stop and arrest for traffic infractions in any case.
Germano indicated that he made a standard Border Patrol vehicle stop, and that the whole interaction with the Dodge occurred approximately one or two miles from the United States-Canadian border.
There were no other witnesses, and the court did not hear testimony about the arrests or interrogation of the defendants. The sole issues in this hearing were the legality of the vehicle stop and the validity of the purported consent search. Defense counsel made closing argument that there was no probable *624 cause for the stop under People v Ingle (36 NY2d 413 [1975]), there was no observed violation of vehicle and traffic laws, the stop did not occur at a point-of-entry or border station, and that Border Patrol agents were not authorized simply to pull over anyone. The prosecution answered that the stop was in close proximity to the border, and that Germano had a level two right of inquiry under People v DeBour (40 NY2d 210 [1976]), based on a reasonable suspicion that criminal activity was afoot. This, said the prosecution, gave Agent Germano the right to pull the Dodge over; and, because of a presumption of shared possession of the things found in the vehicle, Morrow also had standing to challenge the stop and the search.
Conclusions of Law
Defense counsel’s reliance upon People v Ingle (36 NY2d 413 [1975]) is misplaced. Ingle involved a stop for a “routine traffic check,” and the case holds that the police may not stop a motorist for such a check unless the officer reasonably suspects a violation of the Vehicle and Traffic Law. Here, the Federal Border Patrol agent was concerned with interdicting illegal aliens and preventing smuggling, and, by his own testimony, was not trained in or concerned with the enforcement of New York’s vehicle and traffic laws.
The law governing roving patrol stops grows out of the Fourth Amendment jurisprudence beginning with Terry v Ohio (392 US 1 [1968]). “The Fourth Amendment applies to seizures of the person, including brief investigatory [vehicle] stops.” (United States v Cortez, 449 US 411, 417 [1981]; United States v Brignoni-Ponce, 422 US 873 [1975].) In Brignoni-Ponce the Court held that, where an officer’s observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, the government interest at stake may justify the minimal intrusion of a brief investigatory stop. (422 US at 881, cited and discussed in United States v Sugrim, 732 F2d 25, 29-30 [2d Cir 1984].) Among the factors which an officer might reasonably articulate to warrant suspicion would be the proximity of the encounter to the border, the suspect’s behavior, mode of dress and haircut, and the officer’s experience in detecting illegal entry. (Sugrim, 732 F2d at 30.)
Roving patrols encounter particular skepticism from the courts because the motorist has no warning of them; police use a greater show of authority than in a roadblock or checkpoint; and they often involve unlimited discretion on the part of the *625 police officer without a systematic selection process for stopping vehicles. (Delaware v Prouse, 440 US 648 [1979]; United States v Brignoni-Ponce, 422 US 873 [1975]; United States v MartinezFuerte, 428 US 543 [1976]; United States v Johnson, 2001 WL 1313727, 2001 US Dist LEXIS 16973 [ND NY, Oct. 18, 2001]; Matter of Muhammad F., 94 NY2d 136 [1999], all discussed in Kamins, New York Search and Seizure, at 405 [Gould Pubis 14th ed 2004].)
A roving patrol stop must be reasonably related in scope to the justification for its initiation under Terry v Ohio (392 US 1 [1968] at 29). A roving patrol detention is permitted on less than probable cause because of the legitimate enforcement interests, but the trade-off is that the scope of the detention must be carefully tailored to its underlying justification. With respect to roving Border Patrols, the Brignoni-Ponce rule is that “the officer may question the [suspected aliens] about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.” (422 US at 881-882; see also Florida v Royer, 460 US 491 [1983].) This rule is followed in both the federal and state courts. (See discussion in United States v Bews, 715 F Supp 1206, 1210 [WD NY 1989], and in People v Carrillo, 257 AD2d 780 [3d Dept 1999].) In short, the Border Patrol agent must have a particularized and objective basis for suspecting legal wrongdoing — something more than a “mere ‘hunch.’ ” (United States v Arvizu, 534 US 266, 274 [2002]; Almeida-Sanchez v United States, 413 US 266 [1973]; United States v Sharpe, 470 US 675 [1985]; United States v Cormier, 77 Fed Appx 65 [2d Cir 2003].)
Analysis
Border Patrol Agent Germano saw the Dodge and thought it was out of place. The Texas license plates near the northern New York border late on a midweek night were at odds with his observation of usual traffic in that area. His job was to watch for aliens, smuggling and contraband that he might encounter. When the Dodge made a series of improbable turns and appeared evasive to Germano, given the proximity to the border and the fact that something didn’t seem right, he was justified in making an initial investigative stop to seek proof of citizenship and make a limited inquiry into his concerns. However, nothing in his testimony suggested any expressed concern about aliens or smuggling, and he did not assert such concerns as the *626 basis for his stop. Therefore, when he received assurances as to citizenship and satisfied himself that there were no apparent aliens in the vehicle, his basis for further detention ended, and he was required to end the encounter.
If he had seen a traffic violation in the time before the stop, Germano was free to report that and call in state or local law enforcement authorities to assist. He did not do that, and instead called in Border Patrol backup. Any further Border Patrol investigation, under the cited case law, was required to depend either on probable cause to believe, based on articulable facts, that a crime was being committed, or on a valid consent to a search. This case followed the consent approach. Morrow, although a passenger, has standing to contest the search because he was later charged on a statutory shared possession theory with respect to the weapons in the vehicle, as the People concede.
The People have a heavy burden to establish the voluntariness of consent to a vehicle search. (People v. Whitehurst, 25 NY2d 389 [1969]; People v Bell, 170 AD2d 515 [2d Dept 1991]; People v Corbin, 201 AD2d 359 [1st Dept 1994]; Kamins at 454; see also, Schneckloth v Bustamonte, 412 US 218 [1973]; United States v Dewitt, 946 F2d 1497 [10th Cir 1991], cert denied sub nom. Rison v United States, 502 US 1118 [1992]; Bumper v North Carolina, 391 US 543 [1968]; United States v Mendenhall, 446 US 544 [1980]; United States v Matlock, 415 US 164 [1974]; all discussed in United States v Land, 882 F Supp 1299 [WD NY 1994].) A voluntary consent to search must be a “true act of the will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with official coercion, actual or implicit, overt or subtle.” (People v Gonzalez, 39 NY2d 122, 128 [1976].)
The question of whether Germano was permitted to ask if he could search is analogous to the situation where a police officer makes a traffic stop, issues a citation and then asks for permission to search. In the latter situation the request to search was itself improper because it went beyond the scope of the reasonable detention related to the traffic charge. (People v Banks, 85 NY2d 558 [1995].) Here, Agent Germano had no further concerns about aliens or smuggling, and therefore lacked authority to ask further investigative questions. He was not at the border, and the roving patrol is not the functional equivalent of the border, so the line of cases allowing search and ques- . tions at the border without probable cause have no bearing on *627 the roving patrol stop. (See discussion in United States v Bews, 715 F Supp 1206, 1209-1210 [WD NY 1989].)
Since the stop of the Dodge exceeded the permissible scope of a Border Patrol roving stop, the guns seized must be suppressed. In view of that decision, the court need not decide whether the consent to search given by LaRose was valid.