[788 NYS2d 48]

Samuel Thompson, Appellant, v Naimatullah Abbasi, Defendant, and N&A Taxi, Respondent.

First Department, January 4, 2005

### APPEARANCES OF COUNSEL

*Law Office of Daniel Chavez,* Bronx (*Lawrence B. Lame* of counsel), for appellant.

*Gerber & Gerber, LLP,* Brooklyn (*Thomas Torto* and *Jason Levine* of counsel), for respondent.

### OPINION OF THE COURT

MARLOW, J.

In the context of this appeal, we engage in the perennial debate over the issue of whether a plaintiff's evidence of personal injury meets the statutory threshold set by Insurance Law § 5102 (d), "an elusive standard that all too frequently escapes facile and final resolution" (*Brown v Achy,* 9 AD3d 30, 31 [2004]). Consequently, we respectfully and simply urge that the "serious injury" threshold be the subject of High Court interpretation or statutory reform aimed at drawing a brighter line between those cases where a plaintiff's injuries are truly and verifiably "serious" within the meaning and intent of section 5102 (d), and those which are neither. One need only examine the scores of repetitive judicial and legal debates on this issue to conclude reasonably and quickly that the status quo is a diversion of precious court resources which is correctable in the interests of fairness, justice and efficiency.

Defendant N&A Taxi established a prima facie entitlement to summary judgment by submitting evidence demonstrating that plaintiff did not sustain a serious injury arising from a car accident involving the parties (*see* Insurance Law § 5102 [d]; *Licari v Elliott,* 57 NY2d 230 [1982]). Specifically, N&A submitted affirmed reports of two medical doctors who, upon examining plaintiff, concluded that, although there were positive MRI findings of plaintiff's cervical spine, plaintiff had normal range of motion in his cervical spine as well as his lumbosacral spine and wrists (*see Noble v Ackerman,* 252 AD2d 392 [1998] [existence of herniated disc does not per se constitute serious injury]). In addition, N&A submitted plaintiff's bill of particulars (*see Dan v Luke,* 237 AD2d 165 [1997]), which indicates that plaintiff missed only one week of work following the accident. N&A thus met its initial burden that plaintiff did not sustain an injury

which prevented him from performing substantially all his customary activities during 90 of the first 180 days following the accident.

The burden then shifted to plaintiff to raise a triable issue of fact that a serious injury was sustained within the meaning of the Insurance Law (*see Gaddy v Eyler*, 79 NY2d 955 [1992]). Failure to raise a triable issue of fact requires the granting of summary judgment and dismissal of the complaint (*see Licari v Elliott*, 57 NY2d 230 [1982], *supra*). Plaintiff has not met his burden. Accordingly, we affirm the motion court's dismissal of the complaint.

Initially, we note that the motion court erred in rejecting plaintiff's unsworn MRI reports submitted in opposition to the dismissal motion. N&A had presented plaintiff's MRI results through its experts' affirmations in support of its motion for summary judgment. Therefore, these results were properly before the motion court (*see Brown v Achy*, 9 AD3d 30 [2004], *supra*; *Gonzalez v Vasquez*, 301 AD2d 438 [2003]; *see also Ayzen v Melendez*, 299 AD2d 381 [2002]; *Pietrocola v Battibulli*, 238 AD2d 864 [1997]). Moreover, plaintiff's doctor averred that he personally reviewed the film and reports (*see Dioguardi v Weiner*, 288 AD2d 253 [2001]; *Lesser v Smart Cab Corp.*, 283 AD2d 273 [2001]; *cf. Sherlock v Smith*, 273 AD2d 95 [2000]).

Notwithstanding that plaintiff's MRI reports were properly reviewable on summary judgment, positive MRI findings alone are insufficient to raise an issue of fact (*see Noble v Ackerman*, 252 AD2d 392 [1998], *supra*). In order to raise a triable issue of fact, plaintiff must demonstrate a limitation of range of motion sustained by objective medical findings that are "based on a recent examination of the plaintiff" (*Grossman v Wright*, 268 AD2d 79, 84 [2000]; *cf. Verderosa v Simonelli*, 260 AD2d 293 [1999] [doctor's opinion of significant limitations based upon recent personal examination of plaintiff]). Other than an initial evaluation of plaintiff on December 3, 1999, eight days after the accident, by a neurologist referred to plaintiff by his chiropractor, a follow-up visit 2½ years later, the MRIs of plaintiff's cervical spine and left wrist, and plaintiff's own allegation in his affidavit that he "attended physical therapy" for about five months, the record is devoid of any competent evidence of plaintiff's treatment, need for treatment, or why his alleged treatment ended after five months.

The neurologist, Dr. Gutstein of Neuro Care Associates, P.C., averred that he conducted an examination of plaintiff on

December 3, 1999. However, plaintiff stated that Dr. Velasquez of Neuro Care Associates, P.C., conducted the initial examination and evaluation. In any event, regardless of who performed the initial examination, plaintiff's submissions are insufficient to raise a triable issue of fact. Dr. Gutstein averred that he performed a straight-leg raising test in which plaintiff demonstrated a 70% restriction of range of motion on the left side. However, plaintiff submitted no MRI results of his lumbar spine. Moreover, upon re-evaluation $2\frac{1}{2}$ years later, on July 5, 2002, Dr. Gutstein performed no straight-leg raising tests or any other tests relating to plaintiff's lumbar spine, nor did the doctor conclude that plaintiff sustained any back injury as a result of the subject car accident. Therefore, plaintiff has failed to set forth any objective medical finding based upon a recent examination which raises a triable issue of fact regarding a serious injury, i.e., significant or permanent, to his back (*see Grossman,* 268 AD2d at 84, *supra*).

In light of plaintiff's otherwise lack of proof in this regard, we need not reach the question whether, in the wake of *Toure v Avis Rent A Car Sys.* (98 NY2d 345 [2002]), straight-leg raising tests alone can ever constitute objective evidence of serious injury (*see Brown,* 9 AD3d at 33 [Court need not reach issue whether straight-leg raising tests alone would be sufficient under *Toure*, and whether our own past decisions (*see e.g. Aguilar v N.Y.C. Water Works*, 298 AD2d 245 [2002]; *Adetunji v U-Haul Co. of Wis.*, 250 AD2d 483 [1998]) are consistent with *Toure*'s reasoning]).

In addition to this deficiency in proof, at the initial examination Dr. Gutstein failed to report any range-of-motion restrictions regarding plaintiff's cervical spine. Thus, despite the positive MRI findings as to plaintiff's cervical spine two months after the accident, there are no objective findings contemporaneous with the accident showing any initial range-of-motion restrictions on plaintiff's cervical spine (*see Pajda v Pedone,* 303 AD2d 729 [2003]) or any detailed explanation for their omission. Consequently, there is a failure of proof relating to the subsequent range-of-motion restrictions in the cervical spine $2\frac{1}{2}$ years after the accident.

The dissent's assertion that we require plaintiff to undergo immediate objective examinations in all cases in order to successfully carry the burden to prove a serious injury, misses the key fact that this plaintiff waited over $2\frac{1}{2}$ years to uncover evidence of the limitations to his neck which he now claims meets

the threshold. The proof gives us no way to determine that the July 2002 alleged limitation was occasioned by the November 1999 accident, as there is no proof of what plaintiff's post-accident limitations were, if any. By "post-accident" we mean limitations suffered within a reasonable time after the accident under all the relevant circumstances. Dr. Gutstein's conclusory assertion, more than 2½ years after the accident, that "it is my opinion that the motor vehicle accident of November [25], 1999 was a competent producing cause of these injuries," without any detail, rationale, or reasonable explanation, cannot serve to supply what plaintiff's objective proof clearly lacks. On this particular record it appears obvious to us that it is general and boilerplate language tailored simply to meet decisional and/or statutory requirements (*see Lopez v Senatore*, 65 NY2d 1017 [1985]).

The record is also devoid of any competent evidence of plaintiff's treatment, other than two visits to a neurologist 2½ years apart, which appear to be for examination only. We have held that a gap in treatment goes to the weight of the evidence, not its admissibility (*see Brown*, 9 AD3d at 33). Here, however, there is not just a gap in treatment, but, apparently, a total lack of competent proof of any treatment whatsoever. While plaintiff himself refers to a visit to his chiropractor the day after the accident, a visit to an orthopedic surgeon, and a five-month course of physical therapy between November 1999 and April 2000, he inexplicably has provided no competent supporting documentation of this "medical treatment," as required by *Friends of Animals v Associated Fur Mfrs.* (46 NY2d 1065 [1979]). By way of explanation, plaintiff himself claimed his chiropractor advised him that he attained the maximum potential in terms of therapy, which provided only temporary relief. However, plaintiff's reliance on his chiropractor's claimed assertion is rank hearsay and therefore insufficient to raise a triable issue of fact (*see Zuckerman v City of New York*, 49 NY2d 557 [1980]). In addition, plaintiff's self-serving explanation that he stopped going to physical therapy because it provided only temporary relief is "entitled to little weight, and [is] certainly insufficient to raise a triable issue of fact" (*Zoldas v Louise Cab Corp.*, 108 AD2d 378, 383 [1985]; *compare Toure*, 98 NY2d at 355 [plaintiff established serious injury where plaintiff's doctor concluded that injuries were permanent and there was no benefit to continued treatment]; *see also Brown*, 9 AD3d at 34 [plaintiff's chiropractic opinion that plaintiff was treated until she reached

maximal medical improvement sufficient to explain gap in treatment]).

As for the dissent's assertion that we "impl[y] that a cessation of treatment conclusively demonstrates an absence of serious injury as a matter of law," we intend no such breathtaking implication, simply because the problem is not the mere absence or ending of treatment. Rather, the problem is born of the absence of any related explanation for the lack or cessation of treatment and, beyond that, an absence of adequate medical proof in this case. We also respectfully disagree with our dissenting colleague's statement that the record contains an adequate explanation for plaintiff's discontinuation of physical therapy. Plaintiff's only proof consists of his hearsay claim that "Dr. Kazdan . . . advised me that I had attained the maximum potential in terms of therapy and suggested that I continue my exercises and restriction of activities at home and at work." First, as noted above, plaintiff's assertion is incompetent hearsay and, for that reason, must be disregarded (*see Zuckerman v City of New York,* 49 NY2d 557 [1980], *supra*). Second, its language is too general and obviously tailored to meet statutory and decisional requirements in any event (*see Lopez v Senatore,* 65 NY2d 1017 [1985], *supra*).

Moreover, in this case there is no competent proof of any treatment by a health care professional which is related to any condition allegedly caused by this accident. Even plaintiff's own affidavit gives us no details or frequency of treatment, and is unaccompanied by any description of plaintiff's alleged treatment by, or associated opinions of the physical therapist he claims he saw.

On appeal, plaintiff claims that he has a "left wrist injury." Plaintiff offers no argument, legal or factual, to persuade us how this meets the threshold for serious injury under the Insurance Law. In addition, plaintiff's neurologist's reliance on what plaintiff informed him was his orthopedist's diagnosis (i.e., "traumatic synovitis left wrist") is "clearly hearsay" (*Zoldas,* 108 AD2d at 383), is not supported by the MRI of plaintiff's left wrist, and lacks probative value on summary judgment (*see Zuckerman v City of New York,* 49 NY2d 557 [1980], *supra*).

Finally, plaintiff has failed to raise a triable issue of fact as to his 90/180-day claim. When construing the statutory definition of a 90/180-day claim, the words "substantially all" should be construed to mean that the person has been prevented from performing his usual activities to a great extent, rather than

some slight curtailment (*see Gaddy v Eyler,* 79 NY2d 955 [1992], *supra; Licari v Elliott,* 57 NY2d 230 [1982], *supra; Berk v Lopez,* 278 AD2d 156 [2000], *lv denied* 96 NY2d 708 [2001]). In light of plaintiff's admission that he only missed one week of work, his unsubstantiated claim that his injuries prevented him from performing substantially all of the material acts constituting his customary daily activities during at least 90 of the first 180 days following the accident is insufficient to raise a triable issue of fact (*see Graham v Shuttle Bay,* 281 AD2d 372 [2001]; *Hernandez v Cerda,* 271 AD2d 569 [2000]; *Ocasio v Henry,* 276 AD2d 611 [2000]). In addition, plaintiff's affidavit in opposition, in which he describes a curtailment of various activities based on restriction of motion and at times "excruciating" pain in his neck, is not supported by his earlier deposition testimony, annexed to his affidavit, in which he only describes back pain while jogging. Plaintiff's self-serving affidavit, prepared in opposition to defendant's summary judgment motion, was clearly tailored to avoid the consequences of his earlier testimony, and is therefore insufficient to raise an issue of fact (*see Phillips v Bronx Lebanon Hosp.,* 268 AD2d 318, 320 [2000]). Given plaintiff's prompt return to work and the absence of any medically objective evidence (*see Toure,* 98 NY2d at 357), his subjective claims of pain and his unsubstantiated claim of inability to perform his customary daily activities are insufficient to raise a triable issue of fact (*see Copeland v Kasalica,* 6 AD3d 253 [2004]).

Accordingly, the order of the Supreme Court, Bronx County (Betty Owen Stinson, J.), entered on or about July 9, 2003, which granted the motion of defendant N&A Taxi for summary judgment dismissing the complaint on the ground that plaintiff did not sustain a serious injury pursuant to Insurance Law § 5102 (d), should be affirmed, without costs.

Saxe, J. (dissenting). In its writing, the majority presses a relentless assault on the serious injury threshold requirement (Insurance Law § 5102 [d]) by increasing the legal proof requirements beyond those which have previously existed. Characterizing its discussion as merely "respectfully . . . urg[ing]" further review by the Legislature or High Court, the majority uses the expression of this lofty concern to convey a neutral high-mindedness while imposing upon injured plaintiffs new impediments to litigation, which will have the effect of shutting the door on legal claims to which they are now entitled under existing law.

I agree that the reports of defendants' experts satisfied their initial burden of showing that plaintiff did not suffer a serious injury as that term is used for purposes of Insurance Law § 5102. However, plaintiff's submissions in opposition to the summary judgment motion were sufficient to create an issue of fact.

Plaintiff was injured in a car accident on November 25, 1999. He was initially taken by ambulance to Bellevue Hospital's emergency room and discharged with pain medication and a cervical collar. The next day, he saw a chiropractor, Jonathan Kazdan, who referred him to a neurologist, Dr. Hal Gutstein.

Dr. Gutstein initially examined plaintiff on December 3, 1999. Plaintiff complained, inter alia, of persistent pain to his neck that traveled to the shoulders and left wrist, and of bilateral back pain. The results of Dr. Gutstein's physical and neurological examination of plaintiff included spasm in the cervical and lumbosacral spine as well as other injury to the right leg, the right arm and the left wrist. His diagnosis was that as a result of the accident, plaintiff sustained a concussion; cervical radiculopathy; lumbar thoracic strain, sprain, and possible radiculopathy; and left wrist injury.

Dr. Gutstein referred plaintiff for diagnostic testing, and advised him to continue chiropractic care and to restrict his activities. On January 28, 2000, he underwent MRIs of his left wrist and cervical spine. The MRI report of radiologist Dr. Charles N. Barax concerning plaintiff's cervical spine reports a left paracentral herniated nucleus pulposus at C3-C4, impinging upon the thecal sac, and a left paracentral herniated nucleus pulposus at C6-C7 impinging upon the cervical cord.

Dr. Gutstein reviewed the MRI films and Barax's report and concluded that they confirmed his medical opinions of plaintiff's condition. Plaintiff attended physical therapy with his chiropractor for approximately five months, until April 2000. Plaintiff explains that the physical therapy had provided only temporary relief for a few hours after each therapy session before the pain would return, sometimes with greater intensity. He still continues to do home exercises, and he takes analgesics and uses a heating pad and hot showers to ease the pain.

On July 5, 2002, Dr. Gutstein re-evaluated plaintiff. His findings at that time included spasm and tenderness in the mid-cervical spine, extending laterally to the trapezius bilaterally; a measurably reduced range of motion of the cervical spine, with flexion 60 degrees of a normal 75 degrees, extension 20 degrees

of a normal 30 degrees, right rotation 30 degrees of a normal 45 degrees and left rotation 35 degrees of a normal 45 degrees. Based on his clinical examination and objective testing, Dr. Gutstein concluded that as a result of the 1999 accident, plaintiff had sustained permanent consequential damage to the cervical spine and adjacent musculo-ligamentous tissues: specifically, cervical spine derangement with radiculopathy due to herniated disc at C3-C4 with impingement upon the thecal sac, and herniated disc at C6-C7 with impingement upon the cervical cord. He asserted that plaintiff is likely to have chronic relapsing symptoms of variable intensity, and that his future treatments would include therapy, medication, a home-care program and medical follow-up for symptomatic relief.

In upholding the dismissal of the complaint, the majority rejects as insufficient plaintiff's medical evidence that he suffered a permanent serious injury, based upon reasoning that must be questioned in several respects. First, the majority asserts that plaintiff failed to provide any objective medical findings based upon a recent examination that raises a triable issue of fact, pointing to a lack of MRIs of plaintiff's lumbar spine and a lack of a repeated straight-leg raising test in the follow-up 2002 exam. However, Dr. Gutstein, having conducted initial and follow-up physical and neurological examinations, including testing range of motion, and having reviewed MRIs which established injury to the cervical spine, was able to point to sufficient support for his conclusion that "as a result of the accident of November 25, 1999," plaintiff had "sustained permanent consequential damage to the cervical spine and adjacent musculo-ligamentous tissues," specifically, "[c]ervical spine derangement with radiculopathy due to herniated disc at C3-C4 with impingement upon the thecal sac and herniated disc at C6-C7 with impingement upon the cervical cord."

The majority next remarks that because Dr. Gutstein's report following his initial examination failed to set forth range-of-motion restrictions regarding plaintiff's cervical spine, "there are no objective findings contemporaneous with the accident showing any initial range-of-motion restrictions on plaintiff's cervical spine." However, the physician initially reported spasms of the cervical spine and cervical radiculopathy, and referred plaintiff for testing, which indeed disclosed serious physical injuries to the cervical spine which were consistent with the pain plaintiff had begun to experience following the accident. The majority's remarks imply that unless the examining physi-

cian immediately performs range-of-motion testing and arranges for an MRI very shortly after the accident, there will be a fatal absence of objective proof of serious injury contemporaneous with the accident. However, imposing such a prerequisite to a claim of serious injury places an unreasonable burden on an accident victim who is in substantial pain but can still move about; rather than resting, taking medication and waiting to see whether the injury is of a type that can resolve itself, a plaintiff must now determine immediately, with expensive tests, whether the pain is caused by the type of injury that does not heal itself and may, in fact, be permanent.

The majority questions Dr. Gutstein's conclusion that the accident caused plaintiff's injuries, suggesting that it lacks "detail, rationale, or reasonable explanation." Here, too, the majority requires of a plaintiff and his physician far more than is necessary in the context of deciding this threshold issue. He examined the patient after the accident, found signs of injury, referred him for objective tests, found the test results to establish the presence of an injury consistent with his observations, and even reconfirmed the continued presence of the originally observed physical problem over two years later. One may wonder what more the majority would like the physician to do in order to conclude that an injury is permanent and was caused by the accident.

The majority further implies that a cessation of treatment conclusively demonstrates an absence of serious injury as a matter of law. This clearly makes an unreasonable demand on an accident victim. A plaintiff, having undergone examinations and testing over a period of months or years, whose treating physician has reviewed the results and concluded that the plaintiff suffers identifiable and permanently disabling injuries, should not have to continue to report in for a repetition of the same testing and examinations in order to keep confirming that the same permanent injury remains present. Moreover, here plaintiff explains that the physical therapy he began after the accident and stopped going to in April 2000 had only provided temporary relief for a few hours after each therapy session before the pain would return, sometimes with greater intensity. He still continues to do home exercises, and he takes analgesics and uses a heating pad and hot showers to ease the pain. Given the objective proof of the injury causing this ongoing pain, plaintiff's explanation of the failure of the prescribed treatment to ease his pain should be sufficient to prevent the dismissal of

his serious injury claim attributable to an observed lack of ongoing treatment. Not every permanent injury can be resolved by treatment; back and neck injuries are frequently handled with the type of ongoing self-administered therapeutic approach that plaintiff ultimately adopted here. The absence of a medical treatment and cure does not negate the existence of the injury, or its permanence.

As to the majority's rejection of hearsay regarding plaintiff's cessation of therapy, and its reference to a lack of "competent evidence," it should be noted that hearsay evidence is permissible in opposition to a summary judgment motion as long as it is not the only proof submitted (*see Guzman v L.M.P. Realty Corp.*, 262 AD2d 99, 100 [1999]).

The definition of "serious injury" in Insurance Law § 5102 (d) includes, inter alia, "significant limitation of use of a body function or system," and "permanent consequential limitation of use of a body organ or member." Proof tending to establish this is adequately contained in plaintiff's submissions. The lack of ongoing treatment, the lack of an immediate discernment of the serious nature of the injury to the cervical spine, and the failure to test for diminished range of motion until a later date should not form the basis for dismissal of the action of a plaintiff who has experienced disabling pain since the accident, which pain was finally determined to be caused by an identified permanent injury to the cervical spine. The hurdles thrown by the majority into plaintiff's path would be appropriate points to be made by defendant at trial, to seek avoidance of liability under Insurance Law § 5102. But they should not be relied upon to non-suit a plaintiff who has established, by objective evidence, that as a result of the accident he suffered a permanent injury, and that this injury has ongoing disabling effects.

Tom, J.P., and Sweeny, J., concur with Marlow, J.; Saxe, J., dissents in a separate opinion.

Order, Supreme Court, Bronx County, entered on or about July 9, 2003, affirmed, without costs.