■ HASSAN GORDEN, Appellant, v LEONITE LIRANZO TIBULCIO et al., Respondents. (And a Third-Party Action.) [855 NYS2d 515]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered August 9, 2006, which granted defendants' motion

for summary judgment dismissing the complaint, unanimously affirmed, without costs.

Plaintiff alleges that he sustained personal injuries in September 2002 while a passenger in a vehicle, driven by his brother, which became involved in an accident. He claims that when the accident occurred, his chest and knees hit the dashboard and his right shoulder hit the door of the vehicle.

In his bill of particulars, plaintiff specified the following injuries: disc herniations, disc bulging, degeneration of the parespinal muscles, sensory loss of the upper extremities, impaired mobility, pain aggravated by coughing and sneezing, difficulty standing or sitting, and difficulty walking and climbing stairs. His supplemental bill of particulars alleged injuries to his knees, including tears of the menisci, buckling, locking, instability, burning, clicking and swelling. Plaintiff claims he was confined to bed for approximately 90 days, confined to home for approximately six months, and was partially disabled.

At his deposition, plaintiff testified that he could not return to work from the date of the accident until January 2003, and that he remained confined to bed and/or home for approximately four months after the accident. He also testified that he first sought medical treatment approximately one week after the accident, complaining of pain in both knees, both shoulders, and his neck and back. He undertook a four-month course of physical therapy, which included acupuncture, massage, electrical stimulation and chiropractic, five days a week. He was also sent for radiological studies, including an MRI.

Plaintiff further testified he had been involved in a prior auto accident in September 2000 that resulted in injuries to his neck and lower back. He commenced a lawsuit for that accident that was settled for $500.

Two independent medical examinations were conducted on plaintiff. The first was performed in January 2005 by Dr. Michael J. Katz, an orthopedist. Dr. Katz reviewed the X-ray, MRI and EMG reports taken at the time of the 2002 accident and performed various range-of-motion tests on plaintiff's cervical and lumbar spine, knees and shoulders. Dr. Katz found plaintiff's range of motion to be normal and concluded that cervical and lumbosacral strains, as well as the bilateral knee and shoulder contusions, were all "resolved." Dr. Katz further opined that plaintiff showed "no signs or symptoms of permanence on a causally related basis," that he was not disabled, and was "capable of gainful employment as a security guard, but is not working by choice. He is capable of all activities of his daily living."

The second independent medical examination, conducted in June 2005 by Dr. Burton S. Diamond, a neurologist, also found plaintiff's range of motion to be within normal ranges. Although Dr. Diamond noted a decreased range of motion in the low back area, based upon the results of various tests, he concluded that "this restriction was purely voluntary." He also concluded that plaintiff's cervical and lumbar sprain was resolved, there was no permanency to his condition, that plaintiff was capable of working on a full-time basis and performing the normal activities of daily living.

Defendants moved for summary dismissal of the complaint on the ground that plaintiff did not meet the serious injury threshold set forth in Insurance Law § 5102 (d). In opposition, plaintiff submitted four medical reports from his treating physicians at the time of the accident, which included copies of the radiologic and MRI studies. In an affirmed follow-up report dated October 28, 2002, Dr. Jefferson Gabella compared range-of-motion limitations to the normal range in a percentage format, and he diagnosed plaintiff as having lumbar sprain/strain, lumbar radiculopathy, cervical herniated/bulging discs, and internal derangement of the left shoulder and right knee. Dr. Gabella opined that these injuries were causally related to the 2002 accident and limited plaintiff in the activities of daily living.

Plaintiff also submitted the affirmed report of his current treating physician, Dr. Louis C. Rose, who first examined plaintiff some 3½ years after the accident. He also reviewed the MRI studies and X-ray evaluations from 2002. Although Dr. Rose reported restricted range of motion, he did not indicate in his report the normal range of motion for the areas tested. Dr. Rose concluded plaintiff's injuries to his shoulders and knees were a "direct result" of the 2002 accident, and his spinal injuries were due to an "exacerbation of a pre-existing injury to his neck and lower back."

The IAS court found that defendants established a prima facie case of entitlement to summary judgment, and that plaintiff failed to raise triable issues of fact that he had sustained a qualifying injury under Insurance Law § 5102 (d). The court found that with the exception of Dr. Rose's affirmation, none of the medical documentation was submitted in admissible form. Moreover, Dr. Rose relied on unsworn medical reports to reach his conclusions after an examination that took place more than three years after the accident, and his report failed to state with specificity the normal range-of-motion with respect to tests he had performed on plaintiff.

Defendants met their burden of establishing prima facie

entitlement to summary judgment that plaintiff did not sustain a serious injury under Insurance Law § 5102 (d). The affirmed reports of an orthopedist and neurologist, made after a review of plaintiff's medical records and a personal examination in 2005, stated that as of that date, plaintiff did not suffer from a neurologic or orthopedic disability, and that the injuries to plaintiff's shoulder, cervical and lumbar injuries were resolved (*see Perez v Hilarion*, 36 AD3d 536 [2007]). Moreover, the reviews conducted by these doctors of plaintiff's medical records, MRIs and the treating physicians' reports, including the records of treatment during the 180-day treatment period immediately following the accident, were insufficient to establish that plaintiff had sustained a serious injury under the 90/180 category of Insurance Law § 5102 (d), thus shifting the burden to plaintiff to establish triable issues of fact with respect to these claims (*see Nelson v Distant*, 308 AD2d 338, 339 [2003]).

At the time of the incident, plaintiff's physicians made three references to plaintiff's ability to perform his usual and customary activities for 90 of the 180 days following the incident: Dr. Gabella's September 30, 2002 report stated he instructed plaintiff not to perform "heavy work" until told to do so by the doctor; Dr. Mohamed K. Nour's October 15, 2002 report recommended that plaintiff "Avoid any strenuous activities as lifting, carrying, pushing or pulling heavy weights"; and Dr. Gabella's October 28, 2002 report concluded that "patient is somewhat limited in activities of daily living." These statements are too general in nature to raise an issue of fact that plaintiff was unable to perform his usual and customary activities during the statutorily required time period and do not support plaintiff's claim that his confinement to bed for 90 days and to home for six months was medically required.

Under the permanent consequential limitation and significant limitation categories of Insurance Law § 5102 (d), plaintiff must submit medical proof containing "objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system" (*John v Engel*, 2 AD3d 1027, 1029 [2003]). Certainly, the reports of defendants' examining doctors are detailed and contain such objective, quantitative evidence. While the unsworn MRI reports that plaintiff submitted in opposition to the motion were improperly rejected by the motion court (*see Thompson v Abbasi*, 15 AD3d 95, 97 [2005], citing, inter alia, *Ayzen v Melendez*, 299 AD2d 381 [2002]), the material contained therein was reviewed and cited by plaintiff's

physicians in their respective reports. Dr. Rose's report cites an MRI taken of plaintiff's knees a few weeks after the accident, revealing "intrasubstance tear and/or mixoid degeneration involving the posterior horn of both menisci." Dr. Rose diagnosed "internal derangement . . . with possible medial meniscal tear." However, he does not explain why he ruled out degenerative changes as the cause of the internal derangement. This failure rendered his opinion speculative that the derangement was caused by the accident (*see Abreu v Bushwick Bldg. Prods. & Supplies, LLC*, 43 AD3d 1091, 1092 [2007]). Similarly, MRIs of plaintiff's spine taken shortly after the accident revealed herniations and other pathologies that plaintiff's expert opines were sustained in the September 2000 motor vehicle accident and exacerbated by the instant September 2002 accident, but the expert does not indicate that he reviewed the medical records concerning plaintiff's condition immediately following the previous accident. Thus, there is no objective basis by which to measure the claimed aggravation of injuries, or to attribute any new injuries to the later accident (*McNeil v Dixon*, 9 AD3d 481, 483 [2004]). Moreover, while plaintiff's expert states plaintiff had a restricted range of motion, he does not indicate the normal range for the areas tested, and he further fails to describe the objective tests he used to measure the restrictions reported (*see Shaw v Looking Glass Assoc., LP*, 8 AD3d 100, 103 [2004]). Also unexplained is plaintiff's lack of treatment since January 2003 (*see Pommells v Perez*, 4 NY3d 566, 574 [2005]).

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Andrias, Gonzalez and Sweeny, JJ.