*285 OPINION OF THE COURT
Lucy Billings, J.
I. Background
Plaintiffs sue to recover for personal injuries sustained October 22, 2006, when a motor vehicle owned and operated by defendant Celen collided with a motor vehicle plaintiff Rima Lake owned and operated, in which plaintiffs Raymond Lake Sr., Raymond Lake Jr., Raymond Lake III, and Yadira Rodriguez were passengers. Raymond Lake Jr. has discontinued his action. Celen moves for summary judgment (CPLR 3212 [b]) dismissing the claims of Raymond Lake Sr., Raymond Lake III, and Rodriguez on the ground that they have not sustained a “serious injury” entitling them to recover for “non-economic loss.” (Insurance Law § 5102 [d]; § 5104 [a].) Defendant’s motion, supported by a physician’s findings that plaintiffs’ spinal conditions are caused by degeneration, not trauma, requires the court to determine what findings plaintiffs’ medical evidence must include to defeat the motion.
After oral argument March 18, 2009, and attempts to settle the action, Raymond Lake III and Rodriguez presented supplemental affidavits from treating physicians. In a telephone conference on April 14, 2009, Celen posed no objection to the court considering the supplemental affidavits. For the reasons explained below, the court grants his motion to the extent set forth, but denies his motion in all other respects.
II. Summary Judgment on the Absence of Serious Injury
To obtain summary judgment, defendant Celen must make a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence eliminating all material issues of fact that he caused plaintiffs Raymond Lake Sr., Raymond Lake III, and Rodriguez to sustain a “serious injury” as defined in Insurance Law § 5102 (d). (CPLR 3212 [b]; Shaw v Looking Glass Assoc., LP, 8 AD3d 100, 102 [1st Dept 2004]; Chatah v Iglesias, 5 AD3d 160 [1st Dept 2004]; Shinn v Catanzaro, 1 AD3d 195, 197 [1st Dept 2003].) Only if defendant satisfies this standard, does the burden shift to plaintiffs to rebut defendant’s prima facie showing, by producing admissible evidence sufficient to require a trial of material factual issues as to whether plaintiffs sustained a serious injury. (Knoll v Seafood Express, 5 NY3d 817, 818 [2005]; Franchini v Palmieri, 1 NY3d 536, 537 [2003]; Lamb v Rajinder, 51 AD3d 430 [1st Dept 2008]; Shaw v Looking Glass Assoc., LP, 8 AD3d at 102.)
*286 A. Raymond Lake Sr.
Defendant’s physicians, Kuldip Sachdev, M.D. and S.W Bleifer, M.D., examined plaintiff Raymond Lake Sr. on April 16, 2008, and reviewed his diagnostic studies and medical records. Dr. Bleifer found no orthopedic abnormalities. While Dr. Sachdev found limitations in Raymond Lake Sr.’s spinal range of motion, Dr. Sachdev attributed them to degenerative conditions unrelated to any traumatic impact of the October 2006 collision. (Rose v Citywide Auto Leasing, Inc., 60 AD3d 520 [1st Dept 2009]; see Delfino v Luzon, 60 AD3d 196 [1st Dept 2009]; Valentin v Pomilla, 59 AD3d 184, 186 [1st Dept 2009]; Sky v Tabs, 57 AD3d 235, 236-237 [1st Dept 2008]; Becerril v Sol Cab Corp., 50 AD3d 261, 262 [1st Dept 2008].) Melissa Sapan Cohn, M.D. reviewed magnetic resonance imaging (MRI) of Raymond Lake Sr.’s cervical and lumbar spine and left shoulder conducted in November 2006 and found degenerative changes with bulging in his cervical spine, degenerative disc disease and bulging in his lumbar spine, and degenerative changes in his left shoulder, all unrelated to trauma. This combined evidence demonstrates that the October 2006 collision did not cause Raymond Lake Sr. to sustain a permanent or significant limitation of functioning in his spine or any of his claimed injuries. (Marsh v City of New York, 61 AD3d 552 [1st Dept 2009]; Rose v Citywide Auto Leasing, Inc., 60 AD3d at 520; Delfino v Luzon, 60 AD3d at 198; Russell v Mitchell, 59 AD3d 355, 356 [1st Dept 2009].)
In rebuttal, Samuel Mayfield, M.D., who conducted the MRIs of Raymond Lake Sr.’s spine, found they revealed herniation at multiple levels, from C3 to C6, in his cervical spine and disc bulging and disc space narrowing at L3-L5 in his lumbar spine. John Himelfarb, M.D., who conducted the MRI of Raymond Lake Sr.’s left shoulder, found hypertrophic changes of the acromioclavicular joint impinging on the supraspinatus.
Chiropractor Fokion Avgerinos began treating Raymond Lake Sr. November 1, 2006, and upon examination found specified losses in range of motion in his cervical and lumbar spine. Dr. Avgerinos diagnosed herniated cervical and lumbar discs and left shoulder derangement resulting from the October 2006 collision and imposing permanent limitations. Raymond Lake Sr. fails to present evidence of a recent examination, however, as required to demonstrate a serious injury in the category of a significant or permanent consequential limitation of functioning. (Park v Champagne, 34 AD3d 274, 276 [1st Dept 2006]; Thompson v Abbasi, 15 AD3d 95, 97 [1st Dept 2005]; Bent v *287 Jackson, 15 AD3d 46, 48 [1st Dept 2005]; Brown v Achy, 9 AD3d 30, 31 [1st Dept 2004]; see McNair v Lee, 24 AD3d 159, 160 [1st Dept 2005].)
B. Raymond Lake III
Defendant’s physicians, Naunihal Sachdev Singh, M.D. and again Dr. Bleifer, examined plaintiff Raymond Lake III in March and April 2008, respectively, reviewed his diagnostic studies and medical records, and found no orthopedic or neurological abnormalities. Dr. Cohn reviewed MRIs of Raymond Lake Ill’s cervical and lumbosacral spine conducted November 13, 2006, and found degenerative changes and disc bulging unrelated to trauma. (Delfino v Luzon, 60 AD3d at 198; Valentin v Pomilla, 59 AD3d 184 [2009]; Lattan v Gretz Tr. Inc., 55 AD3d 449 [1st Dept 2008]; Rodriguez v Abdallah, 51 AD3d 590, 591 [1st Dept 2008].) These findings demonstrate that Raymond Lake III did not sustain a permanent or significant limitation of functioning. (Park v Champagne, 34 AD3d at 276; Thompson v Abbasi, 15 AD3d at 97; Bent v Jackson, 15 AD3d at 48; Brown v Achy, 9 AD3d at 31.)
In rebuttal, chiropractor Richard Brodsky, who first treated Raymond Lake III October 30, 2006, found lost range of motion from 11% to 37.5% in six planes of his cervical spine and from 11% to 33.3% in three planes of his lumbosacral spine. Dr. Brodsky found that the MRIs of Raymond Lake Ill’s spine revealed disc herniation at the L5-S1 level, a disc bulge at the C4-C5 level, and straightening of his cervical lordotic curve. While Dr. Brodsky does not specifically attest that he reviewed the MRI films themselves, the court must view the evidence in the light most favorable to plaintiffs, as opponents of the summary judgment motion. (Toure v Avis Rent A Car Sys., 98 NY2d 345, 353 [2002].) In any event, John T. Rigney, M.D., who conducted the MRIs November 13, 2006, found they revealed herniation at L5-S1 and bulging at C4-C5. Dr. Brodsky diagnosed these conditions and cervical lordotic curve straightening as caused by the October 2006 collision and permanent.
Eric A. Crone, D.O. examined this plaintiff January 24, 2008, and found lost lumbar right side bending of 33% to 50%. Dr. Crone also diagnosed an L5-S1 disc herniation caused by the October 2006 collision and concluded that plaintiffs lumbar limitation in functioning was permanent. Dr. Crone further concluded that plaintiff could no longer lift more than 10 to 15 pounds, bend, twist, or climb.
*288 C. Yadira Rodriguez
Defendant’s physicians, Dr. Singh and Dr. Bleifer, also examined plaintiff Rodriguez in March and April 2008, reviewed her diagnostic studies and medical records, and found no orthopedic or neurological abnormalities. Dr. Cohn also reviewed MRIs of Rodriguez’s cervical spine conducted November 13, 2006, finding minimal degenerative changes and a disc bulge unrelated to trauma, and MRIs of Rodriguez’s lumbosacral spine conducted the same date, finding no abnormalities. These findings demonstrate that Rodriguez also did not sustain a permanent or significant limitation of functioning.
In rebuttal, Dr. Rigney, who conducted the MRIs of Rodriguez’s spine November 13, 2006, found disc bulging at C4-C6 and straightening of the curvature in her cervical spine, but no abnormalities in her lumbosacral spine. Dr. Brodsky initially examined Rodriguez October 30, 2006, and found lost range of motion from 11% to 44.4% in five planes of her cervical spine, and from 14% to 28.6% in three planes of her lumbosacral spine. Dr. Brodsky diagnosed Rodriguez with a disc bulge at C4-C5 and straightening of the cervical curvature attributable to the October 2006 collision and causing permanent limitations.
Dr. Crone conducted a single evaluation of this plaintiff September 3, 2008, when he found lost range of motion from 12% to 50% in three planes of her cervical spine. He found her condition, including her cervical pain and limitations, to be post-traumatic, attributed to the October 2006 collision, and permanent.
D. Treatment Cessation
Raymond Lake III and Yadira Rodriguez ceased medical treatment in August 2008. This cessation of treatment, if unexplained, is fatal to these two plaintiffs’ claims of a significant or permanent consequential limitation. (Baez v Rahamatali, 24 AD3d 256 [1st Dept 2005], affd 6 NY3d 868 [2006]; Pommells v Perez, 4 NY3d 566, 574 [2005]; Brown v Singh, 52 AD3d 367 [1st Dept 2008]; Gorden v Tibulcio, 50 AD3d 460, 464 [1st Dept 2008]; see Wadford v Gruz, 35 AD3d 258, 259 [1st Dept 2006].) Their treating physicians, however, explain that further treatment for Raymond Lake III and Rodriguez would have been merely palliative, which sufficiently explains the treatment cessation. (Toure v Avis Rent A Car Sys., 98 NY2d at 355; Turner-Brewster v Arce, 17 AD3d 189, 190 [1st Dept 2005]; Brown v Achy, 9 AD3d at 34-35.)
*289 E. Inability to Perform Daily Activities for 90 Days
Regarding plaintiffs’ remaining claims of an injury or impairment that prevented plaintiffs from performing substantially all their daily activities for 90 of the 180 days following the collision, Raymond Lake Sr. testified that he was not confined to his bed or home at all. Raymond Lake III testified that he missed only one month of work after the collision and then returned to light duty work. Rodriguez testified that she missed only V-k months of work after the collision and then resumed her former duties as a dietary aide.
These admissions demonstrate that these plaintiffs did not sustain an injury or impairment that prevented them from performing substantially all their daily activities for 90 of the 180 days following the collision. (Brantley v New York City Tr. Auth., 48 AD3d 313 [1st Dept 2008]; Alexander v Garcia, 40 AD3d 274 [1st Dept 2007]; Thompson v Abbasi, 15 AD3d at 101; Flores v Singh, 13 AD3d 203, 204 [1st Dept 2004].) Plaintiffs’ medical evidence in rebuttal, including the findings by the osteopath and chiropractor that these plaintiffs sustained significant limitations of the cervical or lumbar spine, does not support the functional disability required to sustain a claim of an impairment that prevented substantially all their daily activities for any period. (Morris v Cisse, 58 AD3d 455, 457 [1st Dept 2009]; Ayala v Douglas, 57 AD3d 266, 267 [1st Dept 2008]; Lopez v Simpson, 39 AD3d 420, 421 [1st Dept 2007]; Uddin v Cooper, 32 AD3d 270, 272 [1st Dept 2006].)
E Findings of Degeneration by Defendant’s Physicians
Raymond Lake III and Yadira Rodriguez, to support each of their serious injury claims, also must rebut defense physician Cohn’s findings that these plaintiffs’ injuries were degenerative. (Becerril v Sol Cab Corp., 50 AD3d at 262; see Rose v City wide Auto Leasing, Inc., 60 AD3d 520 [2009]; Levine v Deposits Only, Inc., 58 AD3d 697, 698 [2d Dept 2009]; Rivera v Gelco Corp., 58 AD3d 477 [1st Dept 2009]; Latían v Gretz Tr. Inc., 55 AD3d at 450.) Failure to address defendant’s evidence of degeneration renders any finding that the injuries were caused by trauma purely conclusory or speculative. (Delfino v Luzon, 60 AD3d at 198; Valentin v Pomilla, 59 AD3d at 186; Saint-Hilaire v PV Holding Corp., 56 AD3d 541 [2d Dept 2008]; Rodriguez v Abdallah, 51 AD3d at 591; see Marsh v City of New York, 61 AD3d at 552; Rose v Citywide Auto Leasing, Inc., 60 AD3d at 520; Sky v Tabs, 57 AD3d at 238; Santana v Khan, 48 AD3d 318 [1st Dept 2008].)
*290 Based on this authority, if defendant’s physicians find no disc bulge and no functional limitations, and plaintiffs’ physician finds a disc bulge and functional spinal limitations, for example, this conflicting evidence raises a factual issue defeating summary judgment. If defendant’s physicians find a disc bulge, however, but find it is degenerative, whether or not they find limitations, and plaintiffs’ physician finds the disc bulge is traumatically induced, causing limitations, this conflicting evidence is not enough to defeat summary judgment. (See Delfino v Luzon, 60 AD3d at 198; Valentin v Pomilla, 59 AD3d 184 [2009]; Lattan v Gretz Tr. Inc., 55 AD3d 449 [2008]; Rodriguez v Abdallah, 51 AD3d at 591.) Thus a finding of no abnormality with no limitation is less of a hurdle for plaintiffs than a finding of an abnormality with limitations caused by degeneration.
Moreover, defense physicians’ findings that an impairment is degenerative are considered, without further elucidation, “nonconclusory,” while findings by plaintiffs’ experts that the impairment was caused by the traumatic impact of the collision are considered unsupported. (E.g. Marsh v City of New York, 61 AD3d at 552.) Even where defense physicians find disc desiccation as evidence of degeneration predating the collision, but no functional restrictions in any event, and plaintiffs’ experts, not disputing the prior degeneration, find that the collision triggered spinal restrictions, this conflict does not raise a factual issue because the evidence of degeneration is unrefuted. (E.g. Delfino v Luzon, 60 AD3d at 198; see Kasel v Szczecina, 51 AD3d 872, 873 [2d Dept 2008].)
The affidavits and affirmations by plaintiffs’ chiropractor and osteopath highlight this anomaly. Dr. Brodsky’s initial affidavit finds nothing in Raymond Lake Ill’s history or Yadira Rodriguez’s history, which would include their respective ages of only 30 and 27 years, that would have contributed to their disc herniation or bulging other than the October 2006 collision. (E.g. June v Akhtar, 62 AD3d 427 [1st Dept 2009]; see Rivera v Gelco Corp., 58 AD3d 477 [2009].) Dr. Crone attests that, even if the herniation or bulging were a latent condition before the collision, it caused the condition to become symptomatic, as only after the collision did these two plaintiffs suffer persistent spinal limitations despite a course of therapy. Yet, because neither Dr. Brodsky nor Dr. Crone specifically addresses Dr. Cohn’s findings of degeneration in plaintiffs’ initial opposition to defendant’s motion, their opposition would fail under the recent controlling authority.
*291 The supplemental affidavits by both Dr. Brodsky and Dr. Crone, however, explain how this authority overlooks accepted diagnostic practice. When medical practitioners conclude, as Dr. Brodsky and Dr. Crone did in their original reports, that trauma contributed to the abnormalities and limitations in functioning found in Raymond Lake Ill’s lumbar spine and Rodriguez’s cervical spine, that diagnosis specifically excludes all other possible causes, including degeneration. (Kasel v Szczecina, 51 AD3d at 873; see Rose v Citywide Auto Leasing, Inc., 60 AD3d at 550; Valentin v Pomilla, 59 AD3d at 186.) “[A]ll other possible causes are ruled out when a diagnosis is reached” as to the cause of injuries. (Supp affs of Richard Brodsky, D.C. 11 6.) “I ruled out other possible causes, including degeneration, when I reached my diagnosis and opinion as to causation.” (Supp affs of Eric A. Crone, D.O. 1i 6.)
This specific negation of “degeneration” is now enough to defeat summary judgment. The experts’ explanation of their original diagnoses, however, show that reference to this magic word ought not to be so determinative.
III. Conclusion
Plaintiffs Raymond Lake III and Rodriguez present evidence explaining their respective gaps in treatment and addressing the findings of degeneration by defendant’s physician. Therefore the findings by plaintiffs’ doctors of persistent, quantified restrictions in Raymond Lake Ill’s lumbar range of motion and Rodriguez’s cervical range of motion, objectively supported by a diagnoses of lumbar and cervical disc bulges (Wadford v Gruz, 35 AD3d at 259; McNair v Lee, 24 AD3d at 160; Rosario v Universal Truck & Trailer Serv., 7 AD3d 306, 309 [1st Dept 2004]; Shinn v Catanzaro, 1 AD3d at 198), raise factual issues whether these plaintiffs’ impairments constitute a significant or permanent consequential limitation. (Ferguson v Budget Rent-A-Car, 21 AD3d 730, 731 [1st Dept 2005]; Sepulveda v Reyes, 19 AD3d 297 [1st Dept 2005]; Seda v Khabrane, 16 AD3d 118 [1st Dept 2005]; Soogrim v Upgrade Contr. Corp., 8 AD3d 57 [1st Dept 2004].)
Consequently, the court grants defendant’s motion for summary judgment to the extent of dismissing all claims by plaintiff Raymond Lake Sr. and the claims of a serious injury under the 90 out of 180 days category by plaintiffs Raymond Lake III and Yadira Rodriguez, but otherwise denies defendant’s motion. (CPLR 3212 [b], [e]; Insurance Law § 5102 [d]; Alexander v
*292 Garcia, 40 AD3d 274 [2007]; Ferguson v Budget Rent-A-Car, 21 AD3d at 731; see Thompson v Ramnarine, 40 AD3d 360, 361 [1st Dept 2007]; Toussaint v Claudio, 23 AD3d 268, 269 [1st Dept 2005].)